C. L. ALEXANDER, Appellant,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee.

March 18, 1977.

Certiorari Granted June 6, 1977.

Affirmed by Supreme Court Feb. 6, 1978.

Hughie Ragan, Jackson, for appellant.

Brooks McLemore, Jr., Atty. Gen., William W. Hunt, III, Asst. Atty. Gen., Nashville, Howard F. Douglass, Asst. Dist. Atty. Gen., Jackson, for appellee.

DAUGHTREY, Judge.

## OPINION

The defendant-appellant, C. L. Alexander, and his codefendant, James Morrow, were indicted for assault with intent to commit first degree murder. Both were convicted of assault and battery and sentenced by the jury to eleven months and twenty-nine days incarceration. Only Alexander appeals the conviction.

There was a sharp conflict in the testimony at trial. According to Melvin Perry, the 61 year old victim, two men stormed through the front door of his house one night as he lay sleeping in his bed, knocked out the ceiling lights, beat, kicked and then dragged him onto the front porch. There they stripped Perry of all his clothes except a tee shirt, and demanded money. Perry said that after he gave them the money he had in his wallet, $14.00, they threatened to kill him if he didn't reveal the whereabouts of the "rest" of his money. The two men finally put him in an automobile and drove him to a remote spot where they pulled him from the car and physically assaulted him again. When their activity was interrupted by the passing of another car, they fled, leaving Perry injured and half-naked at the side of the road.

The occupants of the passing car sought help for Perry. A local constable came to the scene and drove the battered victim back to his house to dress before taking him to a local hospital. The constable described the house as "ramshacked": there was broken glass and blood on the porch, panes were missing from the front door (which was standing open), the electric ceiling lights had been smashed, the stove had been knocked over, and the house was in disarray.

The victim had never seen the two defendants before the day in question. Morrow had been to Perry's house earlier that day, in the company of another man who owed Perry a small amount of money. Perry accompanied them to an informal gathering at a house up the road which was attended by several other people, including the defendant, Alexander. Perry testified that he did not know Morrow and Alexander by name, but that his identification of the defendants as the two men who assaulted him was predicated on the fact that he "had done seed them" at the time of the assault and "knowed their faces."

There is no dispute that the two defendants were in the victim's home on the date in question, and that they there engaged in a physical encounter with Perry. Statements given by the defendants to police several days later at the time of their arrest were introduced at trial over objection. According to both statements, the defendants went to Perry's house because of an altercation that had occurred earlier in the day between Perry and a third party. Alexander told police he went for the purpose of seeing if the victim was "all right"; Morrow said that Alexander was angered by Perry's earlier behavior and wanted to get even with him. They gave varying reports of what occurred at Perry's home. According to Alexander, Perry was the first aggressor; according to Morrow's story, Alexander first assaulted Perry and when Perry fought back, Morrow joined the fight. They both said they later attempted to take Perry to the hospital and that when he became obstreperous, they left him on the road. Both defendants denied robbing Per-

ry. Both were fairly young men, and everyone concerned with the case was white except Perry, who was black.

We think the evidence against the defendant, in the absence of any error committed at trial, would be sufficient to sustain the conviction. Therefore we overrule those assignments of error regarding the sufficiency of the evidence to support the verdict of the jury.

■ Several other assignments are likewise without merit. The defendant complains of the trial court's failure to sever Alexander's case from that of Morrow. But there was no timely motion to sever filed prior to trial. Thus the defendant has waived his right to complain on appeal of the court's failure to sever when asked to do so in mid-trial. *Hoskins v. State*, 489 S.W.2d 544 (Tenn.Cr.App. 1972).

Alexander next attacks a certain portion of the prosecutor's closing argument as being improper, on the ground that it contained a prejudicial misstatement of fact. There was a contemporaneous objection entered to the prosecution's averment, but it was not made on the basis now assigned as error. Furthermore, tested under guidelines previously developed by this court, we do not think the prosecutor's comment resulted in reversible error. See generally *Judge v. State*, 539 S.W.2d 340 (Tenn.Cr. App. 1976).

The defendant further objects to the victim's identification of him as one of the assailants, purportedly on hearsay grounds. However, the gist of the complaint is lack of personal knowledge, and we find that the defendant's contention in this regard is not supported by the record.

Finally, Alexander contends that his constitutional right to confrontation was violated by the introduction of Morrow's confession implicating him in the assault on Perry. At trial Alexander made a timely objection to the admissibility of Morrow's statement on the basis of the United States Supreme Court's opinion in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). There the Court held that the use of one co-defendant's confession to implicate the other violates the non-confessing co-defendant's Sixth Amendment right to confront the witnesses against him.

In this case neither defendant took the stand. Because Morrow did not testify, Alexander had no opportunity to cross-examine him regarding the content of Morrow's prior statement. Compare *Nelson v. O'Neil*, 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971). And although both co-defendants confessed and both statements were read to the jury, the substance of the two confessions was not the same. Thus the situation does not fall within the exception noted in *O'Neil v. State*, 2 Tenn.Cr. App. 518, 455 S.W.2d 597 (1970) and *State v. Elliott*, 524 S.W.2d 473 (Tenn.1975).

■ The State contends that the *Bruton* violation was cured by substitution of the phrase "my friend" for Alexander's name each time it appeared in Morrow's statement. This argument is supported, rather lamely we think, by the proposition that the term "my friend" could apply to any one of many people who were in fact friends of Alexander. The State cites no legal authority for its position.

Under Tennessee law the editing of Morrow's statement was insufficient to cure the *Bruton* problem involved. See *White v. State*, 497 S.W.2d 751 (Tenn.Cr.App. 1973), wherein this court determined that substitution of the phrase "the other person" for the name of a non-confessing co-defendant constituted a violation under *Bruton*. The *White* court held that "a statement of the confessing co-defendant [can] be used only if completely stripped of any incriminating references to the non-confessor," and that "the insertion of 'the other person' does not meet that test." 497 S.W.2d at 755. Likewise, in the situation now before us, there could be little or no doubt in the jurors' minds that the reference to "my friend" in Morrow's statement was in fact a reference to Alexander. This result was all the more inevitable because the State also introduced Alexander's statement in which he admit-

ted being in Perry's house with Morrow.* To compound the error, there is no indication in the record that the trial court at any time instructed the jury that Morrow's statement could not be used against Alexander in determining Alexander's guilt or innocence of the crime charged. We think the *Bruton* error here is clear and unmistakable.

We recognize that such error may be considered harmless in cases where proof of the defendant's guilt is overwhelming and it appears beyond a reasonable doubt that the error has had no effect on the verdict. *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); *State v. Elliott, supra*. After careful study, we are unable to say that this is true in the case before us. It follows that the defendant is entitled to a new trial free of such error.

Reversed and remanded.

RUSSELL, P. J., and GALBREATH, J., concur.

* Thus this case must be distinguished from *Gwin v. State*, 523 S.W.2d 636 (Tenn.Cr.App. 1975), in which this Court held that there was no *Bruton* violation because, among other factors, the confessing co-defendant's statement had been redacted to read "blank" in each place where a non-confessing co-defendant's name appeared. The distinguishing point is the fact that there were multiple co-defendants in *Gwin*, and not just two, as here, whose identities were otherwise made obvious to the jury.