**STATE of Tennessee, Appellee,**

v.

**Carl HOWARD and Jackie Dale McBee, Appellants.**

Court of Criminal Appeals of Tennessee.

March 19, 1981.

Permission to Appeal Denied By Supreme Court June 1, 1981.

Lee M. Greer, III, Paris, for appellant Howard.

William T. Looney, Paris, for appellant McBee.

William M. Leech, Jr., State Atty. Gen., Jerry L. Smith, Asst. State Atty. Gen., Nashville, W. R. Kinton, Jr., Dist. Atty. Gen., Clayburn Peeples, Ted Neumann,

Asst. Dist. Attys. Gen., Trenton, for appellee.

OPINION

BYERS, Judge.

The appellants were convicted of kidnapping and sentenced to serve not less than four (4) years nor more than ten (10) years. They were convicted, also, of aggravated rape and sentenced to life imprisonment.

Both appellants attack the sufficiency of the evidence and say the verdicts were the result of passion on the part of the jury.

McBee in a separate issue says his case should have been severed from Howard's case for trial because Howard's confession implicated him and the redaction thereof did not sufficiently protect his right of confrontation.

Howard, separately, raises the issue of whether a statement made by him was taken in violation of his constitutional right.

The judgments as to McBee are affirmed.

The judgments as to Howard are reversed and the cases are remanded for new trials.

The attack upon the sufficiency of the evidence is based upon the alleged victim's inability to identify either appellant despite the fact she was in the presence of her assailants over three hours and knew the appellants. Also, they say there was an absence of medical testimony as to sexual penetration.

The female victim, age 11, testified on the night in question she was babysitting for her two younger brothers in their mobile trailer home located in Henry County near Paris. At approximately 11:00 p. m., a truck pulled in front of the trailer and a man knocked on her front door. She answered the door, a man grabbed her by the arm, covered her eyes and dragged her to the truck where another man drove them away. The young girl was raped by both occupants. Later the truck ran out of gas and the girl was taken across a field and hidden in a barn. One of the males stayed with her while the other successfully sought gas. Upon his return, they got back in the truck where one of them raped her again. Subsequently she was released in the vicinity of her trailer.

A husband and wife, who were neighbors of the young victim, testified they heard a scream around midnight coming from the young girl's trailer, at which time the husband observed a red and white Ford truck departing from the victim's trailer. The neighbors promptly checked the trailer, found the young girl missing and reported this to the police.

A deputy sheriff of Henry County who was aware the victim was missing, checked an abandoned red and white Ford truck off Highway 641. He noticed the truck had an Arkansas license plate and it was in the vicinity of a barn which was in a nearby field. He also observed the same red and white truck around 4:00 a. m. at the residence of the appellant McBee. When the Henry County officers surrounded the home the appellants responded to the sheriff's command to come out and were arrested.

The sister of McBee testified she owned the red and white truck and it was in her brother's possession on the night of the crime. The mother of the young victim, a witness for the State, testified she knew both appellants, she had been intimate with McBee and had earlier seen both of them together on the night of the crimes.

The doctor who examined the victim testified he observed some swelling of the right labia and a small amount of blood in her vagina. There was also an apparent bite mark over the left breast. He could not relate from his examination whether there had or had not been sexual penetration.

A serologist from the Tennessee Crime Laboratory testified his examination of the vaginal slides and rectal swabs taken from the victim revealed spermatozoa.

A pair of shoes found in appellant McBee's residence matched plaster of paris shoe prints found in the barn. A pair of blue jeans also found in the residence revealed head hair which was consistent with

the hair of the victim and pubic hair which was consistent with appellant McBee's. A plastic container found in the truck contained a small amount of gasoline. A short piece of hose which, according to the sheriff looked like a "siphon hose", was found in the barn containing gasoline. A ponytail holder found in the cab of the truck was identified as a type similar to ones the victim used, and a hair found on the ponytail holder was consistent with the victim's head hair.

Neither appellant testified, but Howard made a statement to the sheriff, which was read to the jury, in which he said he was present when the child was raped but he was not a participant.

The victim's inability to identify the rapists is a matter of weight for the jury. The fact the doctor could not relate either way as to the penetration is also a matter of weight for the jury. It does not leave the offense incomplete for the victim testified both penetrated her. The evidence of pelvic trauma, the presence of spermatozoa in her vagina and rectum show the child was sexually used.

As to McBee, the evidence of hair samples, the evidence of the shoe print and other circumstantial evidence is sufficient to find guilt beyond a reasonable doubt. Rule 13(e), T.R.A.P.

■ Appellant McBee urges that the admission of appellant Howard's redacted statement violated the *Bruton* rule so as to deprive him of a fair trial. The State concedes the redacted statement which included numerous references such as the "other man" was totally inadequate. *White v. State*, 497 S.W.2d 751, 755 (Tenn.Cr.App. 1973). The trial court should have granted his motion for a severance.

However, the other evidence of guilt as to McBee: (a) plaster casts of shoe prints in the barn matching the shoes found in McBee's residence, (b) being in possession of the red and white Ford truck, (c) head hairs

discovered on the blue jeans from the residence being consistent with that of the victim's and pubic hair found on the jeans being consistent with appellant McBee's, (d) being seen earlier with Howard, (e) plastic milk container in the truck containing gasoline, and (f) the truck found abandoned in the vicinity of the barn, render the error harmless beyond a reasonable doubt. *Alexander v. State*, 562 S.W.2d 207, 210 (Tenn. Cr.App.1977); T.R.A.P., Rule 36(b).

■ Both appellants complain the life sentences imposed by the jury and approved by the trial court were excessive. The punishment is within the statutory limits, it cannot be said the verdict was a result of passion, prejudice and caprice. *Howard v. State*, 506 S.W.2d 951, 955 (Tenn.Cr.App. 1973).

In evaluating Howard's complaint, we must view the evidence in light of the statement admitted against him.

At approximately 4:00 a. m. on the morning following this crime, Howard was arrested in McBee's residence. He was placed in a room at the jail where he was held for some sixteen hours before making a statement. This room was described as being 4' × 5' or 5' × 6' square. The only furnishings in the room was a chair. Howard, who was dressed only in cutoff, blue jean shorts, testified he lay on the floor, against the wall, in an effort to remain warm. At approximately 8:00 p. m. he asked to see the sheriff.

The sheriff says Howard's purpose in seeing him was to make a statement about the case. The sheriff testified he advised Howard of his rights and then the following occurred, as reflected from the tape of the conversation: [1]

"SHERIFF: Okay, just tell me about it.
HOWARD: Well, I'm kinda scared to really and I want to talk to my lawyer before I did but . . .
SHERIFF: It's up to you hoss, I don't have to ask you a question Carl. I'm

---

1. It appears all of the conversation was taped with the exception of the warnings and Howard's responses thereto.

doing this just to see where you want to stand in this game. It's a serious charge let me tell you right now. It carries ten to life so like I said, I've got my evidence and I gave you copies of what I've done so far and also read to you what I intend to do in the future. In as far as checking your person and in as far as doing the analysis on the truck, now this truck will be transported to the Tennessee Crime Lab in Nashville. It will be hauled up there and they're going to go through it piece by piece, fingerprints, anything that is detrimental to this case, they're going to take it for evidence, so now it's strictly up to you. You don't have to give me a statement. I want you to understand that right off, and you can interpret it either way. It can either help you or hinder you. Now if you are not so deep in this thing as I think you are, now would be the time to come out with it."

■ The issue becomes whether this conversation shows a voluntary relinquishment of the right to counsel by Howard. We think it does not.

*Miranda V. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), says "If the individual states that he wants an attorney, the interrogation must close until an attorney is present." Subsequent cases have held, however, the State is not foreclosed from interrogation after a demand for an attorney, if the circumstances show the accused voluntarily and knowingly waived the right to counsel. *United States v. Pheaster*, 544 F.2d 353 (9th Cir. 1976); *Pierce v. Cardwell*, 572 F.2d 1339 (9th Cir. 1978).

*Miranda* holds, and we have followed this in *Lee v. State*, 560 S.W.2d 82 (Tenn.Cr. App.1978), the State carries a heavy burden in showing a relinquishment of a constitutional right where the record is silent as to waiver of such right. In this case, there is no written waiver of right to counsel. Waiver, if at all, must be found in the context of the statement above quoted.

The State relies upon *Pheaster* and *Pierce* for justification. We think these cases do not serve the State under the circumstances of this case.

Both *Pheaster* and *Pierce* indicated they wished counsel prior to interrogation. Subsequent to this, the authorities showed each of them evidence linking them with the crime. The Courts reasoned the accused in these cases, relying on the hopelessness of their plight, gave up knowingly and voluntarily.

In the case before us, the only evidence, dehors the statement, of Howard's guilt is the evidence he was with McBee on the evening of the crime.

When the sheriff's statement to Howard is compared to the record it is obvious he had no evidence beyond this. The entire claim by the sheriff is based not on hard evidence, and indicates an attempt to lead Howard to believe there was strong evidence of his guilt based upon scientific evidence. We think this clearly was done to induce Howard to relinquish his right to counsel.

■ Where the waiver of counsel is asserted in the basis of presentation of evidence of an accused's guilt, as in *Pheaster* and *Pierce*, the evidence must exist in fact and not in the imagination of the interrogator.[2]

We hold, therefore, the introduction of the statement of Howard was erroneous and the same should have been suppressed.

The circumstantial evidence of Howard's guilt would be sufficient absent the confession if the jury heard only this and based their judgment thereon. We are unable to say, however, how the jury would resolve this issue absent the statement and cannot say the erroneous admission of the statement was harmless error beyond a reasonable doubt.

DAUGHTREY, J., concurs.

2. In all of the evidence seized, which was thirty (30) pieces, none connected Howard to the case.

DWYER, Judge, dissenting.

I cannot subscribe to the reasoning of the majority in reversing the conviction of Howard.

The majority stresses Howard's confinement in a small room for 16 hours while scantily clad lying on the floor in order to keep warm. What is left unsaid is that appellant's testimony at the suppression hearing concerning the conditions of his confinement formed no basis for his attack on the competency of his confession.

The majority further stresses the incompetency of the confession in that the sheriff misled appellant as to the evidence against him and this somehow induced his relinquishment of right to counsel. In responding to appellant's request to see him, the sheriff informed the appellant of the evidence that had been gathered in the investigation of the rape and kidnapping. There was no deception, as I view the evidence, when the sheriff informed appellant that the truck was going to be analyzed "piece by piece" for fingerprints and anything detrimental to this case. The sheriff's statement related to matters that were relevant to his investigation and in keeping with his duties as a peace officer. Contrary to the majority's reasoning that the only "hard evidence" the sheriff had against Howard was that he had been with McBee on the evening of the crime, were the facts that the victim had related that two men in a pickup truck had abducted and raped her, that McBee and Howard were arrested together in McBee's residence and a pickup truck was in the driveway. Likewise, there is no authority whatsoever to sustain the reasoning that during the investigation the sheriff should perform a judicial task and inform Howard of what evidence would be relevant to him and not to McBee.

While acknowledging that the court must presume that a defendant does not waive his constitutional rights, a waiver may be clearly inferred from the actions and words of the person interrogated. The question of waiver must be determined on the particular facts and circumstances surrounding that case. *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 1768, 60 L.Ed.2d 286 (1979).

In considering the totality of the circumstances here, legitimate inquiries can be made concerning: (1) the youth of the accused: Appellant Howard was 26 years of age at the time of the crime; (2) his educational background and intelligence rating: There was no showing that Howard was mentally deficient; (3) whether the accused was advised concerning his constitutional rights: The record reflects appellant had been advised as per *Miranda* prior to the interview and that he understood those rights. Furthermore, when appellant sent for the sheriff he was once again advised; (4) the length of detention: Appellant was incarcerated approximately 16 hours prior to the questioning; (5) was the questioning repeated and prolonged? The appellant was not questioned during the incarceration until he requested to see the sheriff; and (6) was physical punishment involved, such as the deprivation of food or sleep? The record indicates the appellant was fed and left alone. As indicated earlier he was scantily clad and the room was cool but he never complained of this condition. No single factor is determinative, *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973); however, based on the surrounding circumstances I am of the opinion that the appellant knowingly and intelligently waived his right to remain silent and the statement was properly admitted.

If law is founded on reason then reason must dictate that when the appellant sent word that he wished to see the sheriff, in responding, the sheriff should not have merely shrugged his shoulders and walked away when appellant mentioned he was scared and "*wanted* to talk to an attorney but ..." The dots indicate a pause as explained by the sheriff at trial and not a conclusive statement that he was exerting his *Miranda* rights. To hold as the majority that the interrogation should have ceased conflicts with the general proposition that "... the right to talk or remain silent is the defendant's, and no mechanical application

of *Miranda* should prevent the informed, voluntary and free exercise of that right." [*Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975)]. *United States v. Davis*, 527 F.2d 1110, 1111 (9th Cir. 1975). The record reflects appellant had been advised of his *Miranda* rights prior to the interview and when appellant sent for the sheriff, he was once again advised,* with the appellant indicating that he understood his rights, which readily distinguishes this record from *Lee v. State*, 560 S.W.2d 82, 83 (Tenn.Cr.App.1977), relied upon by the majority. In short, appellant's remark was not an affirmative request for an attorney but merely a preface to his thinking that he wanted to talk to the sheriff.

If I could agree with the majority that the appellant properly invoked his right to an attorney, his subsequent willingness to give a statement after being informed as to the charges and certain evidence in this case indicated a voluntary waiver of this right. In *United States v. Hodge*, 487 F.2d 945 (5th Cir. 1973), the appellant after being arrested and given adequate warnings requested an attorney. The investigating officer terminated the interview but proceeded to explain the charges and evidence. Hodge then changed his mind and confessed. In affirming the conviction, the court rejected his literal interpretation of *Miranda*, holding instead that an arrestee can change his mind after requesting an attorney so long as the change of mind is voluntary and freely made. *Hodge*, p. 947. Also see, *United States v. Pheaster*, 544 F.2d 353 (9th Cir. 1976). Based on this reasoning Howard relinquished his right to counsel when confronted with the evidence and his subsequent statement was admissible.

With the evidence showing Howard and McBee together before the crime and after the crime, with Howard in McBee's residence and the pickup truck in the driveway, coupled with the little victim testifying that two men raped her and neither appellant testifying or offering evidence, the error if any was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); Tennessee Rule of Appellate Procedure 36(b). The evidence was sufficient for a rational trier of fact to find Howard guilty beyond a reasonable doubt, T.R.A.P. 13(e), as conceded by the majority in remanding the record for a new trial.

I concur completely with the majority's affirmation of the judgment against McBee. I would also affirm the judgment against Howard.

---

* At the suppression hearing it was agreed that the transaction would reflect the sheriff having given the *Miranda* warnings to appellant.