HENRY CURRY, JR.

*v.*

STATE OF TENNESSEE.

397 S.W.2d 179.

(*Jackson,* April Term, 1965.)

Opinion filed December 9, 1965.

WALTER BAKER HARRIS and THOMAS G. CLYCE, Jackson, for plaintiff in error.

GEORGE F. McCANLESS, Attorney General, and ROBERT F. HEDGEPATH, Assistant Attorney General, for the State.

MR. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

Curry was convicted of an assault with intent to commit murder in the first degree and was sentenced to the State pentitentiary for a period of not less than three (3) nor more than twenty-one (21) years. From his conviction he has seasonably appealed.

The only question raised is:

"Did the court err in refusing to sustain the objection of the defendant to the rebuttal testimony of Lieutenant Ed Alderson of the Jackson Police Department to the effect that in his notes, taken during an interview with the defendant and at the request of the defendant, by permitting the introduction of defendant's statement that he knew Mac Shumpert had shot the prosecutor, George Douglas without introducing the entire contents of the statement given him by the defendant?"

The bill of exceptions is in the narrative form and shows in substance that on April 14, 1964, one George

Douglas talked with Curry on the phone. Curry had called Douglas' home for the purpose of talking with Douglas' step-daughter in order to elicit a date with her. She was at that time married to one Mac Shumpert. Douglas and Curry had words over this step-daughter at that time. On the night of April 16, 1964, Mac Shumpert, the husband of the step-daughter, accompanied Curry to a beer joint and shared a quart of beer with him. As they were discussing Mac's wife and the defendant's girl friend, the step-daughter, George Douglas arrived at the cafe. Shortly thereafter Curry followed George Douglas outside the beer tavern at approximately 9:30 p. m., cursed him, hit him and shot him with a pistol. Douglas so testified. Mac Shumpert testified that he saw from inside the cafe the defendant shoot George Douglas out on the street.

While Douglas was in the hospital with another witness in the case, certain statements were supposed to have been made by people who visited Douglas in this hospital room, and the testimony of this person, who was an occupant of the room with Douglas, is to the effect that he did not hear Douglas while these visitors were there say anything about not knowing who shot him. These witnesses, who were called by the defendant, testified that while they were there they obtained a statement from Douglas to the effect that he did not know who shot him. This statement was not offered in evidence and had been lost at the time of the trial.

Curry attempts to fix an alibi by the evidence of his sister and by his own testimony. Curry says that he went to a dance after leaving George Douglas and Mac Shumpert; and that he did not know of the shooting until the next day. He, Curry, specifically denied that he ever told

Lieutenant Alderson of the Jackson Police Department that he personally knew that Mac Shumpert shot George Douglas. On direct examination Lieutenant Alderson testified that he had talked to Curry when he arrested him at his home, and at that time Curry told him he did not shoot George Douglas on the preceding night, but that Mac Shumpert shot Douglas.

After the defense had closed its proof Lieutent Alderson was placed back on the stand in rebuttal. At this time he said that he took notes when he first arrested Curry and he produced a three page statement which was purported to be his notes, and, over objection of counsel for Curry, he was permitted to testify that a sentence in this statement was that ''he (Henry Curry, Jr.) knew Mac Shumpert shot George Douglas.'' The defense then was permitted to question this officer in any way they desired, but their efforts to have the entire contents of this statement which he had read from, introduced in evidence and read to the jury was denied by the trial judge, and it is on this denial that the entire defense rests pursuant to the assignment heretofore quoted.

The State very correctly states in its brief that:

''The question to be resolved in this appeal is a rather unique one. Whether or not an extra-judicial self-serving declaration made by the defendant and used in part by the prosecution to impeach the defendant, must be introduced in full as originally made by the defendant is, I believe, a question which has not been resolved by this Court.''

◼ We have of course T.C.A. sec. 40-2441 which requires that confessions or admissions against interest shall not be admitted in evidence in any case unless a

copy of the same has been furnished to the defendant or his counsel on demand. As we see it though, this Section of the Code does not come into play here. It has long been the law in this State that when a part of a confession or admission is entered into evidence the defendant is entitled to have the jury consider the entire confession. *Sambolin v. State*, 215 Tenn. 569, 387 S.W.2d 817. The question though, as far as we know, has not arisen in this State as to whether or not one on cross-examination for the purpose of impeachment may cite, quote, or read merely sentences or parts of a statement which attempt to contradict certain statements made by the defense or defense witnesses, and in this case the defendant. We remember, too, that this is a proposition where he did or didn't, in that on direct examination under the State's proof in chief the Police Lieutenant testified that Curry made such a statement, as above quoted. Curry then takes the stand and says that he didn't make such a statement. The Police Lieutenant is put back on the stand and says he did make that statement because he had written it down and merely quotes that part of the statement. Under such circumstances should the entire statement be admitted?

The Court of Appeals of New York in *People v. Gallo*, 12 N.Y.2d 12, 234 N.Y.S.2d 193, 186 N.E.2d 399, had before it almost the identical question. In this New York case on rebuttal a stenographer had been called to testify as to certain questions and answers that had been taken in an interrogatory of Gallo by the Assistant District Attorney. This witness read into the record not the whole of the statement but selected parts of it in an attempt to contradict what Gallo had said on the stand. At that time the defense asked to be allowed to read

other parts of the same statement, which the defense believed to be exculpatory in nature. This was refused by the trial court, and on appeal the Court of Appeals, speaking through Desmond, Chief Judge of the Court of Appeals of New York, said this:

"The rule is '[W]here use is made in a judicial proceeding of a prior declaration, the entire declaration at the time made so far as relevant must be taken together. A party may not utilize only so much of the declaration as is for his benefit; but he must also admit that which is against his interest, and the whole must stand or fall together' (*People ex rel. Perkins v. Moss*, 187 N.Y. 410, 428, 80 N.E. 383, 389 [11 L.R.A.,N.S., 528]; *People v. Miller*, 247 App.Div. 489, 493, 286 N.Y. S. 702, 705; 7 Wigmore, Evidence [3rd Ed.], sec. 2113, p. 523). As against this the prosecutor argues that, since defendant as a witness denied giving any of these answers, he cannot complain of prejudice from the exclusion from evidence of statements that he himself denied making. Whatever the rule may be in such a case, the record before us shows that the defendant admitted having the interview but denied making some of the answers read into the record by the stenographer or, at least, expressed some doubt as to making them. He admitted making others of the responses as read to the jury. The general nature of defendant's testimony on this subject was that he admitted making some of the replies, denied others, and as to still others said that he could not remember. Under the circumstances, fairness required that defendant's counsel be allowed to read into the record those parts of the statement in which defendant denied his guilt."

We have read the entire text of Wigmore as referred to in this opinion and other sections. This work is well annotated by cases from many States of the Union. A number of these cases hold as did the New York Court of Appeals in this case. There are other cases, especially from California, wherein it is held that the entire conversation when referred to on cross-examination is not necessary but in such a situation only such parts of the conversation as have a bearing on the limited point of challenge are necessary to test the witness's credibility.

Mr. Wigmore in his work on this subject, and particularly at sec. 2113, pages 523 and subsequently, discusses this matter rather fully. He reaches the logical conclusion, we think, that in such an instance the entire statement should be admitted, but that parts of it that are not relevant might be excluded. He nevertheless says that the general rule is:

"This right of the opponent to put in the remainder is universally conceded, for every kind of utterance without distinction; and the only question can be as to the scope and limits of the right."

As said above this bill of exceptions is in the narrative form and the statement is not in the record for us to read other than the part of the sentence as quoted above attempting to contradict Curry. Thus it is, we do not have before us the statement, and, since this is true, we cannot say in view of the way this Police Lieutenant testified in the first instance and on rebuttal, when he quoted from the statement to substantiate what he had said on direct examination in the proof in chief, that this defendant has not been prejudiced by the method and way in which this was done. We are not

saying that normally in a situation of this kind the entire statement should be allowed to go to the jury regardless of whether it bears on the point of contradiction or not (some courts go to this extent, that the entire statement is entitled to go in regardless of what it says). We do not go that far, but we think, even on cross-examination for the purpose of impeaching, that normally statements should be offered so that Court would have an opportunity to pass on whether or not other statements made there, are in anywise pertinent, and also to determine whether or not to exclude portions of the statement not relevant to the items thereof which have been introduced. Under such a situation this Court can then determine whether or not the defendant is harmed by the exclusion.

For reasons here expressed the judgment below is reversed and the case remanded for a new trial.