**STATE of Tennessee, Petitioner,**

v.

**Otis ELLIOTT and Wayne Mitchum, Respondents.**

Supreme Court of Tennessee.

May 27, 1975.

Milton P. Rice, Atty. Gen. and Reporter, William C. Koch, Jr., Asst. Atty. Gen., Nashville, for petitioner.

James G. Cate, Jr., Cleveland, George M. Derryberry, Chattanooga, for Elliott.

Carl E. Colloms, Cleveland, for Mitchum.

## OPINION

COOPER, Justice.

Otis Elliott and Jerry Wayne Mitchum were convicted "of murder in the first degree committed while engaged in the crime of robbery," and were sentenced to ninety-nine years in the penitentiary. A divided Court of Criminal Appeals reversed the convictions and remanded for a new trial. This court granted certiorari to review the holding of the Court of Criminal Appeals that (1) the failure of the State to provide defendants with a transcript of a pretrial hearing for the suppression of defendants' oral confessions was reversible error, and (2) that defendants' right to a transcript of prior proceedings did not include the right to a transcript of a previous trial of co-indicted defendants; and also to consider (3) whether the admission in evidence of oral statements by Mitchum implicating Elliott was a violation of the rule set forth in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

Cornelius C. McClary, the owner and operator of the Oakdale Superette in Cleve-

land, Tennessee, was shot to death and robbed at about 6:30 a. m. on July 19, 1973. Acting on information previously received by a detective in the Bradley County Sheriff's office, an all-points bulletin was issued for a 1966 T–Bird and a late model Continental Mark III. Later that morning, officers found the Continental parked at the trailer home of William Johnson in Charleston, Tennessee. Fresh tracks in the dew-wet grass led from the car to a nearby house. On searching the house, the officers found Elliott, Mitchum, and a third negro, identified as Robert T. Arnold, hiding under the house. A search of the area where the men were found produced more than $2700.00 in currency, some of which was blood-stained, three rings, a wallet containing registration papers belonging to the deceased, and a check for $50.00 which the deceased had cashed for the payee the night of July 18, 1972. Subsequently, the defendants were identified and placed at the Oakdale Superette at the time McClary was killed. According to the identifying witness, Mitchum and another negro were inside the store near the counter and Elliott was just outside the door of the store.

An indictment was returned charging Elliott, Mitchum, Arnold, and William E. Johnson and John W. Sharp with first degree murder and murder in the perpetration of a robbery. In response to a motion for a severance, the latter three defendants were tried together in a separate trial.

While in custody and after the indictment had been returned, Elliott and Mitchum made separate oral statements which were related at trial by Detective Wayne Neeley. Each of the defendants acknowledged their participation in the robbery. Mitchum confessed to his presence at the store with two other men and to his actual participation in the killing of Mr. McClary. Elliott on the other hand denied his presence at the scene of the crime and admitted only that he, as the driver of a second car, waited for the others at a Chevron station more than one mile from the Oakdale Superette. The statements of both defendants reveal that two cars were in fact used in the get-away; one was abandoned and the other, the Continental, was used to transport the defendants to Charleston, Tennessee, where they were found and arrested.

The defendants in separate motions moved to suppress the statements given to police officers on the ground the statements resulted from violence and threats and were not freely and voluntarily made. The trial court conducted hearings on the motions on October 24 and November 8, 1972, and concluded that the defendants had confessed freely, voluntarily, and with a knowledge of their constitutional rights.

Thereafter and prior to the trial on the murder indictment, the defendants moved to have the state give them a free verbatim transcript of the hearings on the motion to suppress and of the earlier trial of the co-indicted defendants. These motions were overruled by order entered on March 6, 1973.

The trial of the defendants was March 20 and 21, 1973. On the day before trial, Mitchum moved for a continuance because he had not been furnished with the transcripts requested in his earlier motion, averring that he "ha[d] thereby been deprived by state action of a material aid in his defense." In overruling the continuance motion, the court made no reference to the transcript of the suppression hearing, but said with reference to the transcript of the prior trial of the other defendants: "Transcripts of the prior, very lengthy trial have not as yet been prepared and the Court, having heard the prior trial, is of the opinion that the transcript when prepared will be of little benefit to the defendants in this trial."

There is no question but that an indigent defendant in a criminal prosecution must be provided with the tools of an adequate defense or appeal when those tools are available for a price to other defendants. Britt v. North Carolina, 404 U.S.

226, 227, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971); Roberts v. LaVallee, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967); Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1955). Generally, included in the basic tools has been a free transcript of prior proceedings in the indigent defendant's own case, where the transcript was needed to vindicate a legal right. Britt v. North Carolina, *supra*; Roberts v. LaVallee, *supra*; United States ex rel. Wilson v. McMann, 408 F.2d 896 (2d Cir. 1969); Gardner v. United States, 132 U.S.App.D.C. 331, 407 F.2d 1266 (1969), *cert. denied,* 395 U.S. 911, 89 S.Ct. 1757, 23 L.Ed.2d 225; Boney v. United States, 128 U.S.App.D.C. 279, 387 F.2d 237 (1967), *cert. denied,* 390 U.S. 967, 88 S.Ct. 1077, 19 L.Ed.2d 1170 (1968). But so far as we have been able to ascertain through a search of the authorities, no federal appellate court has extended the free transcript doctrine so as to make available to an indigent defendant the transcript of testimony in a third party's trial of witnesses who are expected to testify against the indigent defendant,[1] and this court sees no need or justification for doing so.

■ In this state, in the wake of *Griffin* and subsequent cases, the legislature established a system to provide for court reporters and official transcripts in felony and habeas corpus cases. T.C.A. Sections 40–2029—40–2043. T.C.A. Section 40–2037 empowers the trial court to direct the official court reporter to furnish an indigent defendant an official trial transcript if requested. And T.C.A. Section 40–2040 enjoins trial judges to provide indigent defendants with a free transcript for appeal. While these statutes expressly apply only to transcripts for the purpose of appeal, the courts of this state have recognized that a trial judge has the authority to require a transcript of prior proceedings in the indi-

gent defendant's own case be furnished him if it appears that it is necessaary in the interest of justice. See Bowers v. State, 512 S.W.2d 592, 594 (Tenn.Cr.App.1974).

In Britt v. North Carolina, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed. 400 (1971), the trial court overruled the motion by an indigent defendant for a transcript of his first trial for use in his re-trial. The Supreme Court of the United States found no prejudicial error in the trial court's action, as there was evidence of the availability of an alternative device that would fulfill the same functions as a transcript. The Court did emphasize, however, that the state must provide the indigent defendant with a transcript of prior proceedings in his case when the transcript is needed for an effective defense or appeal, stating:

> "Griffin v. Illinois and its progeny establish the principle that the State must, as a matter of equal protection, provide indigent prisoners with the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners. While the outer limits of that principle are not clear, there can be no doubt that the State must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal. * * * (emphasis supplied).

> "In prior cases involving an indigent defendant's claim of right to a free transcript, this Court has identified two factors that are relevant to the determination of need: (1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript."

The need for a transcript of a prior proceeding involving the defendant varies with

---

1. The issue was raised in United States v. Bamberger, 482 F.2d 166 (9th Cir. 1973), but was not decided in view of the court's determination that even if the defendant had the right to a transcript other than his own, any error in denying him the transcript was

harmless beyond a reasonable doubt where he had a copy of the transcript of a still earlier trial. Citing Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

the circumstances of the case as demonstrated by the following decisions. United States ex rel. Cadogan v. LaVallee (C.A.N.Y.1970) 428 F.2d 165, *cert. denied,* 410 U.S. 914, 91 S.Ct. 887, 27 L.Ed.2d 813 (transcript of pre-trial suppression hearing: United States v. Carella, 411 F.2d 729 (2d Cir. 1969) (transcript of trial resulting in mistrial); United States ex rel. Wilson v. McMann, *supra,* (transcript of trial resulting in mistrial); Gardner v. United States, *supra,* (transcript of preliminary hearing); Boney v. United States, *supra,* (transcript of preliminary hearing).

■ In determining whether a transcript is needed, caution dictates that where there is any possibility of need for the transcript, the better procedure would be to require a transcript be provided the indigent defendant and thus alleviate any possibility of a retrial of a case because of the lack of a needed transcript. The reliance on hindsight to show lack of need for a transcript is to rely on a slender reed indeed.

■ In the instant case our examination of the evidence presented at the suppression hearing, a transcript of which is included in the record before us, convinces us that its availability to the defendants prior to trial would have provided no significant assistance, either in preparation for trial or as an aid in impeaching adverse witnesses, and that the defendants were in no way prejudiced by the lack of the transcript. The testimony at the suppression hearing was limited strictly to the issue of whether the confessions of the defendants were voluntary, an "admissibility of evidence" issue to be decided by the trial judge not the jury. There was no testimony concerning the contents of the confessions, nor any other matter which would have a significant bearing on the issue of guilt or innocence of the defendants. Further, of the four witnesses who testified in the suppression hearing at the instance of the state, only one testified in defendants' trial, Detective Wayne Neeley. We find no true inconsistencies in his

testimony, nor have the defendants' cited us to any. Further, and even more important, is the fact that the evidence of guilt of the defendants is overwhelming and is fully corroborated by extrinsic evidence not the subject of the suppression hearing.

In a case where the transcript of a preliminary hearing denied to a defendant for use at trial was not before the court on appeal, and the court could not therefore know whether the transcript would be useful or not, the District of Columbia circuit held that failure to provide the transcript does not require reversal of a conviction where there is clear and convincing evidence of guilt and no showing of prejudice. Gardner v. United States, *supra.*

We hold, contra to the majority of the Court of Criminal Appeals, that the transcript of the suppression hearing was not an "instrument needed to vindicate legal rights" under the circumstances of this case, and that the trial court did not commit prejudicial error in denying the transcript to the defendants.

The defendant Elliott also contends the trial court committed prejudicial error in refusing to declare a mistrial when a state's witness, in relating the substance of Mitchum's oral confession, implicated Elliott, citing Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The *Bruton* rule proscribes, generally, the use of one codefendant's confession to implicate the other as being violative of the nonconfessing codefendant's Sixth Amendment right of confrontation.

■ The Court of Criminal Appeals held in its majority opinion that "the *Bruton* rule has no application where, as in the case before us, both of the jointly tried codefendants confessed," citing O'Neil v. State, 2 Tenn.Crim.App. 518, 455 S.W.2d 597; Briggs v. State, 501 S.W.2d 831 (Tenn. Crim.App.1973). We think this statement is an over-simplification of the impact of the *Bruton* rule. The fact that jointly tried codefendants have confessed precludes a vi-

olation of the *Bruton* rule where the confessions are similar in material aspects, which was the situation in both the *O'Neil* and the *Briggs* cases, *supra*. But where, the confession of one non-testifying codefendant contradicts, repudiates, or adds to material statements in the confession of the other non-testifying codefendant, so as to expose the latter to an increased risk of conviction or to an increase in the degree of the offense with correspondingly greater punishment, the latter codefendant is entitled to test the veracity of the statements in the confession of his codefendant. A denial to him of his right through the failure of his codefendant to take the stand brings the *Bruton* rule into play. In the instant case we have that situation. Elliott confessed his participation in the robbery but only as the driver of the second get-away-car. He denied being closer than a mile and a half to the scene of the crime and denied any involvement in the shooting of Mr. McClary. On the other hand, Mitchum not only admitted being at the Oakdale Superette and shooting the victim, but made statements which placed Elliott at the murder scene contra to Elliott's confession. The admission in evidence of the statements by Mitchum contradicting Elliott's confession, when Mitchum did not testify, was a violation of the Bruton rule and was error. However, in the light of the overwhelming evidence of guilt of these defendants, other than the confessions, we find the error to be harmless beyond a reasonable doubt and not to justify a reversal of this case. See Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284.

The judgment of the Court of Criminal Appeals is reversed, and the judgment of the trial court is reinstated.

FONES, C. J., and HENRY, BROCK and HARBISON, JJ., concur.