David W. OWENS, Appellant,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee.

Nov. 16, 1977.

Certiorari Denied by Supreme Court
Feb. 6, 1978.

Walker Tipton, Covington, for appellant.

Brooks McLemore, Jr., Atty. Gen., John F. Southworth, Jr., Asst. Atty. Gen., Nashville, Michael E. Whitaker, Dist. Atty. Gen., Preston Parks, Asst. Atty. Gen., Somerville, for appellee.

## OPINION

TATUM, Judge.

The defendant, David W. Owens, was sentenced to life imprisonment after conviction of murder in the second degree of his father. Reversed.

The defendant charges that the trial court erred (1) in submitting the issue of insanity upon the *M'Naghten* Rule, (2) in admitting into evidence an inculpatory statement made by him to police officers, and (3) in instructing the jury that Doctor Thatch testified that the defendant knew right from wrong. He also says that the evidence preponderates against the jury verdict.

The defendant entered a plea of not guilty by reason of insanity. There is overwhelming evidence in the record that on the evening of 11 March 1976, the defendant and his father were drinking together. The defendant and his father were driving to get some beer when the defendant stopped his car, took his father out, and stomped his head until he was dead. The defendant put his father's body in the backseat of the car, took it to a creek and threw it in. He immediately telephoned his sister and his employer and confessed to them. Immediately after his arrest, he was given his *Miranda* rights and confessed to the arresting officer. He subsequently summoned officers of the Tipton County Sheriff's Department and gave them a confession.

In December, 1975, the defendant attempted suicide by shooting himself in the stomach with a pistol. After his recovery, he resided with his parents in Tipton County. He was arrested on the night of 11 March 1976. Between March 15 and April 2, he made two other attempts at suicide. On 28 July 1976, the trial judge found the defendant to be mentally ill and ordered him hospitalized at Central State Hospital in accordance with T.C.A. § 33–604.

In his first assignment of error, the defendant says that the trial court erred in submitting the issue of the defendant's insanity to the jury upon the *M'Naghten* test, citing *Graham v. State,* 547 S.W.2d 531 (Tenn.1977). In that case, the Tennessee Supreme Court promulgated the discontinuance of the *M'Naghten* test of insanity in Tennessee and adopted the test proposed by the American Law Institute in its Model Penal Code. The *Graham* decision stated:

"The Model Penal Code standards will be applied (1) in all criminal trials or retrials beginning on or after the date of the release of this opinion and (2) in all cases wherein appropriate special requests were submitted during the trial of the action, *or the issue otherwise was fairly raised in the trial court and supported by competent and credible testimony, and the conviction has not become final.* . . . " [Emphasis supplied] 547 S.W.2d 531, at 544.

This case was tried before the release of the *Graham* opinion. Although no special requests were submitted, the defendant insists that since the issue of insanity was fairly raised in the trial court and supported by competent and credible testimony, the Model Penal Code test was applicable. We think that the "issue" referred to in the above-quoted language does not mean the broad issue of insanity. It means that at trial an issue of law and fact must be made specifically on the Model Penal Code test. We are persuaded by the fact that the Supreme Court expressly refused to reverse the *Graham* case on the basis of the use of the *M'Naghten* rule by the trial court, and by the express statement that the *M'Naghten* rule was Tennessee law prior to the release of the *Graham* opinion. Assignment One is overruled.

Assignments of Error Two and Three complain of the admission into evidence of the defendant's written statement given to Deputy Sheriff Pickard on 1 April 1976. Assignment Two is predicated upon the allegation that the use of the defendant's

statement in evidence is a violation of his constitutional right prohibiting self-incrimination as protected by the Fifth and Fourteenth Amendments to the United States Constitution. The third assignment of error is predicated upon the assertion that there was a violation of the defendant's right to counsel under the Sixth and Fourteenth Amendments to the United States Constitution.

■■■ A jury-out hearing was held by the trial judge to determine whether the statement should be suppressed. The evidence accredited by the trial judge was that the defendant sent a message to Deputy Sheriff Hershel Jones that he wanted to talk with him. Jones was busy and did not see the defendant on that day. On the next day, April 1, the defendant had Deputy R. W. Pickard contacted at home and given the message that the defendant wanted to talk with him. Pickard and Jones then visited the defendant and Jones again gave him his "Miranda Rights." The defendant told them that he had been reading the Bible and wanted to "get it off his chest." The defendant then gave a statement which was reduced to writing and signed by the defendant. He also signed an admonition and waiver form. The constitutionally protected rights against self-incrimination and to the advice of counsel may be relinquished if a defendant knowingly, intelligently and voluntarily waives them. The trial judge found that the defendant had the mental capacity to waive his rights and did so knowingly, intelligently and voluntarily. The trial judge's findings have the weight of a jury verdict and this Court will not disturb his finding unless the evidence preponderates against it. *Taylor v. State,* 180 Tenn. 62, 171 S.W.2d 403 (1943); *Janow v. State,* 4 Tenn.Crim.App. 195, 470 S.W.2d 19 (1971). We do not find that the evidence preponderates against the trial judge's findings.

■■■ Counsel was appointed for the defendant before he sent for the police officers and gave the statement. The defendant insists that *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977) is authority in support of his assertion that counsel was not waived. Due to the factual difference in the two cases, we find *Brewer v. Williams, supra,* inapplicable. The United States Supreme Court expressly held in *Brewer v. Williams, supra,* that a defendant could waive his rights under the Sixth and Fourteenth Amendments without notice to his counsel. We think that when the defendant sent for these police officers on two separate days and gave a statement to them after having been warned of his *Miranda* rights and without questioning by the police officers, the trial judge was justified in finding that he knowingly and intelligently waived his rights. As stated, the mental capacity of the defendant to waive his right to counsel when the statement was given was a question for the trial judge. The trial judge weighed the evidence and found that the defendant possessed the capacity to waive counsel and to give the statement. His finding on this question has the weight of a jury verdict. *Taylor v. State, supra; Janow v. State, supra.* Assignments Two and Three are overruled.

Assignment of Error Four is that the evidence preponderates against the verdict. The defendant says that the basis for this assignment "is that taking the evidence as a whole as presented by the state psychiatrist it is evident that the appellant was so mentally disturbed that he was not able to defend himself."

■■■ The record does not show that a plea of present insanity was made or that there was a determination by the judge or the jury of the defendant's capacity to understand the nature and object of the proceedings against him and to consult with counsel and assist in preparing his defense. However, if there is any indication that the defendant is incapable of standing trial at the time of the retrial of this case, then the trial judge is directed to determine the defendant's capacity in this regard or to submit the question to a jury. *See, Cogburn v. State,* 198 Tenn. 431, 281 S.W.2d 38 (1955); *Mackey v. State,* 537 S.W.2d 704 (Tenn. Crim.App.1975). There is evidence in the record upon which a trier of fact could find

that the defendant was incompetent to stand trial. There is evidence pro and con upon this proposition and the question should be resolved.

 The mental capacity of the defendant at the time of trial has no bearing on his guilt or innocence of committing the crime. We do not find that the evidence preponderates against the jury verdict finding the defendant guilty of murder in the second degree. We overrule this assignment.

 In Assignment of Error Five, the defendant insists that the trial court erred by commenting upon the weight of the evidence in his jury instructions, violating Article VI, Section 9 of the Tennessee Constitution. The portion of the charge complained of is as follows:

"Expert witnesses, Dr. Kington, Dr. Siegmann, Dr. Luton and Dr. Thatch, psychiatrists, have testified as to the mental condition of the defendant. They have testified that in their opinion the defendant knew right from wrong and knew that his act was wrong. They also testified that in their opinion the defendant is able to stand trial."

The State does not deny that this is error but states that the remarks of the trial judge, if error, were harmless.

When asked if the defendant had the mental ability to distinguish right from wrong and knew the nature and quality of his act, Dr. Thatch testified as follows:

"A. That would be most difficult to say in that this man in testing is a little bit retarded. Those people find it awfully hard if they're trying to keep up with the rest of us. I say, 'rest of us' ___ with the average person. And they get frustrated and burst out in anger easily and, of course, drinking whiskey doesn't help it any. Using whiskey. He says and I'm quite doubtful. As I say, most of them

don't remember unless it's an epileptic ___ He doesn't remember the incident; doesn't know why ___ He remembers before that, but he doesn't remember after that. You talk about forensic cases; I had to go back to Chattanooga once about a man that remembered everything right after ___ well, I can't take that, but this man ___ he and his father had been out drinking, apparently, and he, I don't believe, remembers exact events and he certainly ___ He said, 'If I did it, I don't know why.'

Q. Well, Dr. Thatch, based on your period of observation of him, is the defendant competent to understand the nature of the charged [sic] brought against him here today and to assist in his own defense?

A. He's able to understand them; yes, sir. From talking to the other doctors, he needs help in advising his counsel and not too many of us know too much about that."

Dr. Thatch also testified:

"Q. All right, sir, which I believe this report, in essence, says, 'I further find that he should be committed to a forensic service unit, since he is substantially liable to injure himself or others if not treated in a forensic service unit and treatment in such a unit is in this individual's best interest.' That is written on the statement; is it not?

A. Yes, sir. I'm sure of that. Whether it's forensic or not, he certainly should be in a mental hospital for his own protection, if no one else's.

Q. Then he definitely should be in a mental hospital is what you're saying?

A. Yes, sir."

As above shown, the trial judge oversimplified at least the testimony of Dr. Thatch.[1] We cannot say that the comment

---

1. There was also evidence from Dr. Siegman that it would be difficult for the defendant "to follow and pay attention all of the time" at trial and his lawyer would have to spend extraordinary time with the defendant to "help him understand the procedures in court and be assuring." Dr. Siegman described the defendant's personality as "brittle" and that the defendant was a person who might break under stress. (The defendant did not testify, and his attorney cites Dr. Siegman's testimony as a clear showing that the defendant's mental and emotional condition was such that he could not adequately defend himself in this proceeding.)

of the trial judge was harmless error. Assignment Five is sustained.

The judgment of the trial court is reversed and the case is remanded for a new trial. Upon retrial, the trial judge will follow the Model Penal Code test adopted by the Supreme Court in *Graham v. State, supra.* If there is any question at the time of retrial as to the defendant's mental capacity to stand trial, it should be resolved in accordance with *Cogburn v. State, supra* and *Mackey v. State, supra.*

DWYER, Presiding Judge, dissenting.

I will agree that the charge as given by the trial court was error as expressed by my brethren. I do disagree, however, that the record should be remanded for a new trial.

With all four psychiatrists testifying that appellant was competent to stand trial and three clearly testifying that at the time of the killing appellant was sane, the error of the trial court's charge was harmless. T.C.A. 27–117. The appellant is entitled to a fair trial, not a perfect one. *Lutwak v. United States,* 344 U.S. 604, 617, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953). I would, in deference to my colleagues, affirm this conviction where the evidence of guilt is overwhelming and the evidence beyond a reasonable doubt reflects a mental awareness of his crime.