STATE of Tennessee, Appellee,

v.

James Key ROBINSON, Patricia Ann Patterson and Allen Eugene LeMay, Appellants.

No. 14646.

Court of Criminal Appeals of Tennessee.

Aug. 27, 1980.

Abridged Opinion Sept. 15, 1981.

William M. Leech, Jr., Atty. Gen., John C. Zimmermann, Asst. Atty. Gen., Nashville, Charles S. Ramsey, Jr., Dist. Atty. Gen., Manchester, C. Michael Layne, Asst. Dist. Atty. Gen., Manchester, for appellee.

Walter L. Williams, Madison, for Robinson.

James L. Curtis, Nashville, for Patterson.

Robert L. Huskey, Manchester, for LeMay.

## ABRIDGED OPINION

With the concurrence of the court, the original opinion has been abridged for publication.

O'BRIEN, Judge.

A two count indictment was returned against these defendants by the Grand Jury of Coffee County charging them in the first count with murder during the perpetration of a robbery, and in the second count with armed robbery. Robinson was found guilty of felony murder and sentenced to eighty (80) years in the penitentiary. On his armed robbery conviction he was sentenced to thirty (30) years confinement. Patterson was found guilty of second degree murder and sentenced to fifty (50) years. She was sentenced to thirty (30) years on her conviction for armed robbery. LeMay was also convicted of second degree murder and sentenced to forty (40) years confinement. He received a sentence of thirty (30) years in the State Penitentiary for armed robbery. A co-defendant, Andrea Rice, entered guilty pleas to second degree murder and armed robbery prior to the trial of these defendants and received respective sentences of twelve (12) years and ten (10) years confinement. All sentences were fixed to be served consecutively.

The incident leading to their convictions involved the homicide of a man named John Holland who resided in Tullahoma, Tennessee. Holland, a bachelor, about sixty years of age, was acquainted with the defendant, Patricia Ann Patterson. He was a man of some wealth. On the evening of April 6, 1977, these three defendants were in the apartment of Andrea Rice, in Nashville, where she and Allen Eugene LeMay lived together. There is some evidence that the other two defendants also inhabited the apartment on an intermittent basis. The four became engaged in a discussion which ultimately led to a comment from Robinson regarding his need for money. Holland's name was brought into the conversation and the view expressed that, due to his living habits and purported wealth, he would be a prime subject for robbery. They prepared themselves for this venture by obtaining some ladies hose, to be cut and used as face masks, gloves, and Mr. Holland's unlisted phone number from the home where Patterson generally resided with her parents. Robinson carried a weapon referred to as a "buck knife", and LeMay was armed with a .22 caliber pistol. They proceeded to Tullahoma where the two women were able to gain entry into Holland's home through the device of pretending to be there for the purpose of Patterson introducing Rice to the victim. Once into the house one of them surreptitiously unlocked the kitchen door. Shortly thereafter the men burst in with stocking masks over their heads and demanded money of Holland. He told them all he had was in his wallet. Robinson then threw him to the floor, his hands were tied behind his back, and all four of the defendants ransacked the house. They found Seventy Dollars ($70) in cash, a number of weapons of various types, and a collection of coins. These items were loaded into the car by Patterson, LeMay and Rice while Robinson stayed behind for the express purpose of doing away with Mr. Holland in order to avoid identification by him of any of the four. The other three became impatient waiting for Robinson and LeMay reentered the house. Both men returned to the car shortly with neither wearing the stocking masks they had used for disguise. The next morning Holland was found dead. He had suffered two stab wounds in the chest and was strangled by a length of pantyhose wound around his neck. The medical proof indicated his death resulted from either or both of these causes.

As the result of some very astute police work the authorities were led first to Patterson. Further investigation uncovered

the other defendants and brought about their arrest. Each of these defendants gave a statement implicating themselves in the homicide. Andrea Rice testified for the State and Patricia Patterson testified in her own defense. Both of these witnesses implicated the other defendants as well as themselves by their testimony. Each was thoroughly cross-examined, and their testimony was corroborated by other evidence in the record.

Considering first the conviction of James Key Robinson, who was found guilty of murder in the first degree and sentenced to eighty (80) years for that offense, we have concluded his sentence must be modified. In *Miller v. State*, 584 S.W.2d 758, (Tenn.1979) our Supreme Court held that due to certain court decisions dealing with the constitutionality of the death penalty specifically *Collins v. State*, 550 S.W.2d 643, (Tenn.1977), that subsequent to January 24, 1977, until the enactment of Chapter 51, Public Acts of 1977, on April 11, 1977, all death penalty provisions of Acts going back to Chapter 181 of the Public Acts of 1915 were effectively invalidated. The Court held that in the interim period, during which the crimes involved in this case were committed, the legally effective punishment for first degree murder was life imprisonment. This being true we hold that so much of the verdict of the jury and judgment of the court in this case imposing upon Robinson a sentence of eighty (80) years in the penitentiary is in contravention of Article 1, Section 11, of the Constitution of the State of Tennessee, and is invalid in accordance with the ruling in *Miller*, supra. We modify the sentence imposed to life imprisonment.

Each of the defendants take issue with the admission of a group of photographs depicting the body of Mr. Holland from various angles in the room where he was found. The pictures are, in varying degrees, bloody, gruesome exhibitions of the condition of the room and body of the deceased when it was first discovered. Objection was made to their admission on the basis that witnesses could testify about this evidence and that the enlarged photos had no probative value and would tend to inflame the jury. The trial judge overruled the objections and allowed the admission of the photographs, "in view of the nature of the charges involved" . . .

There was absolutely no valid reason given by the District Attorney General for the admission of the photographs in question. They were not relevant to prove any part of the prosecution case and were certainly not probative of any issue in dispute. Since the trial of this case our Supreme Court in *State v. Banks*, 564 S.W.2d 947, (Tenn.1978), has set forth the criteria to be observed for the admission of photographs in trial proceedings. Unquestionably the admission of the photographs in this case was error. Equally without question is the fact that their admission was harmless error in view of the overwhelming evidence of the defendants' guilt. This was indeed a brutal, wanton murder, as the pictures quite vividly reflect. The sentences meted out to the defendants were not inordinately excessive in the light of the gross circumstances of the homicide. As stated in *Banks*, supra, the circumstances fully explain and support the verdict of guilt and the severity of the sentence.

Each of the defendants object to the admission of statements given by them to the police authorities.

Defendant Robinson contends that the advice given him, prior to a statement taken from him by police officers, was incomplete relative to his rights against self-incrimination. He also says he was incompetent to give his statement because of ingestion of drugs and alcohol on the day he was arrested, and that his statement was taken from him without his having signed a waiver.

There were extensive pre-trial motions heard in this case including motions to suppress statements and confessions of the defendants. Evidence introduced at the pretrial hearing on the motion to suppress established that Robinson was arrested by two Nashville Vice-Squad officers each of whom testified they saw no evidence that

he was under the influence of any drug. They also testified he was advised of his *Miranda* rights subsequent to his arrest. He was transported from Nashville to Coffee County by another officer who testified he advised defendant of his *Miranda* rights before they left the Nashville Police Department. He also testified that defendant acted normal. He was again advised of his rights while in the vehicle and responded in the negative to an inquiry to determine if he wanted to answer any questions. At the Coffee County Jail after he had heard a tape recorded statement made by LeMay which implicated him in the murder Robinson made a phone call and then agreed to make a statement. The transcript of the statement includes that portion where he was advised of his rights and indicates he was not warned at that time that anything he said could be used against him. The transcript of his statement indicates he was well aware of his other *Miranda* rights, which he voluntarily waived, and agreed to make a statement. The officers testified he appeared normal at that time and showed no evidence of intoxication. This defendant presented no evidence at the pre-trial suppression hearing. During the trial, in the course of a discussion among counsel regarding the proper method of redacting the confessions of the co-defendants, a protest was made regarding the admission of his statement because there was no signed waiver. In his motion for new trial Robinson challenged the admission of his statement on the grounds that he had never signed a written waiver and that the *Miranda* warnings he received were not complete.

 The manner of objecting to the admissibility of a confession in this State is a travel-worn path. The proper procedure is to conduct a hearing outside the presence of the jury, at the conclusion of which the trial judge determines the question of admissibility of the confession. See *State v. Pursley*, 550 S.W.2d 949, (Tenn.1977). At such a hearing it is incumbent upon the parties to offer all of their proof on the issues. *Shafer v. State*, 381 S.W.2d 254, 214 Tenn. 416 (1964). At the pre-trial hearing in this case Robinson offered no proof on the issue of the voluntariness of his confession. The trial judge ruled that his statement was voluntarily given. There was no evidence offered to indicate otherwise. Lack of an explicit written waiver of the right to remain silent or the right to counsel after *Miranda* warnings does not per se require exclusion of a confession if waiver can be found from facts and surrounding circumstances. See *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). In view of the prior *Miranda* warnings received by this defendant we are satisfied there was a valid waiver. The ingestion of drugs and alcohol does not in and of itself render any subsequent confession involuntary. It is only when an accused's faculties are so impaired that the confession cannot be considered the product of a free mind and rational intellect that it should be suppressed. *Lowe v. State*, 584 S.W.2d 239 (Tenn.Cr.App.1979). In this case there is no evidence that defendant's confession was not competently given.

 Patterson made two statements on April 15, 1977 and a third on April 16th. She contends the officers refused to provide her with her required medication for epilepsy and this resulted in reducing her mental state to one of incoherency and disorganization bringing about a lack of memory which rendered her statements involuntary. She says the advice given her relative to her constitutional rights was inadequate and the malfunctioning tape recorder did not properly record the statement of April 16th in its entirety. There was a sharp conflict in the evidence on these issues at the suppression hearings. The officers testified that Patterson agreed to talk with them after being advised of her constitutional rights and gave two statements, one at 8:35 P.M. and the second at 9:20 P.M. on the 15th of April. Although these statements differ they were basically exculpatory. Later in the evening she asked for, and was given, permission to take her medication. She appeared lucid, coherent, and not under the influence of any drugs during the interview with the officers. The following morning at approximately 10:00 o'clock she

was again advised of her rights and interviewed. A tape recording was made of this interview which reflected the advice given her relative to her constitutional rights, and her subsequent waiver. During the interview she was permitted to take her medication. She was coherent, oriented, and did not appear to be under the influence of any drugs or narcotics. She was afforded comfort breaks during the interview. During the recording of her statement it was determined, after a refreshment break, that the recording device was inoperable due to weak batteries. A new recording device was substituted, the earlier interview was re-recorded on the new tape and questioning was resumed. Although Patterson contradicted this testimony the trial judge accredited the evidence in the record, including the testimony of the State's witness, concerning her mental capacity and the waiver of her constitutional rights. His findings have the weight of a jury verdict and will not be disturbed on appellate review unless the evidence preponderates against those findings. *Owens v. State*, 561 S.W.2d 167, (Tenn.Cr.App.1977). Her claim of drug dependence, even if true, would not render her confession inadmissible or involuntary. See *Lowe v. State*, supra.

LeMay objects to the admission of his statement on the basis that it was taken by law enforcement authorities while he was being illegally detained as a material witness.

Soon after the police investigation led to Patricia Patterson events began to break quickly involving all four of these defendants in the Holland murder. On April 14th police questioned Patterson about another woman who was suspect in the homicide. Immediately after they left her place of employment she placed a call to the apartment where the others were staying. This call was traced and subsequently Metro detectives discovered the Rice automobile at that address. The description of the automobile fit that of the one seen at the Holland home on the night of the crime. Rice was the first of the four arrested. She was transported to Coffee County where she made a statement implicating the others. Search warrants for the automobile and the apartment were obtained and in the car they found a piece of pantyhose which ultimately was determined to be, through microanalysis, a part of the one used to strangle Holland. In the apartment they found a .38 caliber pistol which had been taken from the Holland house. That evening Patterson went to Metro Police Headquarters and gave two statements which, though intended to be exculpatory, contained sufficient inconsistencies to give the authorities probable cause to believe she had been involved in the murder. She was transported to Coffee County that same evening and the next day made a statement implicating herself and the other defendants. On April 16th LeMay was arrested and taken to Metro Police Headquarters. Due to the confusion there an attempt to interrogate him about the Holland homicide was unsuccessful. He was then transported to Coffee County. There is some conflict in the record about whether or not he was charged with murder. There is no question but that he was aware he was being held in connection with the homicide. He talked freely about it enroute to Manchester. After his arrival he was again advised of his rights, signed a waiver, and gave a statement which was taped. Within approximately two hours after his arrest in Davidson County warrants were obtained against him and Robinson. Unquestionably the officers had probable cause to place him under arrest. The defendant is correct in his contention that he is entitled to be informed of the cause for his arrest. T.C.A. § 40–806. But an arrest is not rendered unlawful by the fact that an officer who has authority to make an arrest for a particular offense erroneously states he is making an arrest for some other offense, or even for a cause which is not in fact an offense, or states the offense inaccurately. 6A C.J.S. Arrest, p. 112, note 84, and cited cases. Even if his arrest were illegal it would not affect subsequent statements and admissions voluntarily given by him after being advised of his constitutional rights. See *State v. Hooper*, 10 Ohio

App.2d 229, 39 Ohio Ops.2d 435, 227 N.E.2d 414, cert. denied, 389 U.S. 928, 88 S.Ct. 292, 19 L.Ed.2d 281.

 Robinson and Patterson complain of denial of a severance. Each of the defendants raise the issue of a *Bruton* violation. in view of our belief that a *Bruton* violation occurred in admission of their separate confessions we consider the matter of severance in that context. Each of these three defendants gave a statement to the police. Patterson testified in the case and we need not be concerned about the admission of her statement. All three statements were redacted with the intent to delete any reference to the others. The statements were read to the jury, inserting the word "blank" where the names of or reference to the others occurred. The attempt at redaction was a total failure. Both Robinson and LeMay admitted their own complicity in the robbery but endeavored to lay the blame on the other for the murder of Holland. There was no way that these statements could be introduced into evidence at a joint trial without the statement of one defendant implicating the other in the crime. If the State intended to use these confessions, as they obviously did, then a severance should have been granted. In *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) the United States Supreme Court said, "Admission of a co-defendant's confession implicating a defendant at a joint trial constituted prejudicial error even though the trial court gave clear, concise and understandable instructions that confessions could only be used against the co-defendant and must not be regarded with respect to others on trial for the same offense." It was reiterated that the right of cross-examination is included in the right of an accused in a criminal case to confront the witnesses against him, and to admit a co-defendant's confession at a joint trial in which that co-defendant did not take the stand was an abrogation of a defendant's constitutional right of confrontation, and a denial of the Fourteenth Amendment's guarantee of due process. Our own courts in Tennessee, while consistently following the rule that juries can be trusted to follow the trial court's instructions, have recognized the exception in *Bruton* cited from *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) to the effect that there are some context in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. In *Ellis v. State*, 403 S.W.2d 293, 218 Tenn. 297 (1966), in an opinion by Justice Dyer, the court commented on the exception to the rule on the admission of a statement of a co-defendant where the circumstances were such that an instruction to the jury to disregard the confession would prove ineffective:

"... As a general rule such statements are admissible if the trial judge properly instructs the jury, ...., not to consider them against defendants not present when such statements were made. (Citations omitted). In *Stallard v. State*, 187 Tenn. 418, 215 S.W.2d 807 (1948) this court cited with approval the following from 23 C.J.S. Criminal Law § 935:

'If one of several defendants jointly indicted has made admissions or confessions involving another defendant, the court may, in its discretion, order a separate trial, so that the admissions or confessions, while evidence against the one, may not prejudice the other, and where the circumstances are such that an instruction to disregard the confession of one when considering guilt of another would prove ineffective to eradicate the impression on the jury the severance should be granted, unless the prosecuting, attorney expressly declares that such statements will not be offered in evidence on the trial, or unless all reference to the moving defendant is eliminated from the confession. 187 Tenn. 429, 215 S.W.2d 812.' "

In *Taylor v. State*, 493 S.W.2d 477, (Tenn. Cr.App.1972), cert. denied 3/19/73, this Court reversed where the attempt at redaction of a confession of a non-testifying co-defendant was strikingly similar to the case

sub judice. We noted in *Taylor* that all statements of non-testifying co-defendants were not inadmissible in evidence. *Properly altered to eliminate all connecting references to other defendants such a statement could be rendered unprejudicial.* (Emphasis ours). It was also noted that under circumstances of overwhelming proof of guilt elsewhere in the record admission of a co-defendant's statement, though error, could be held harmless error. In *White v. State*, 497 S.W.2d 751, (Tenn.Cr.App.1973), citing from *Commonwealth v. Scott*, 355 Mass. 471, 245 N.E.2d 415, 419, 420, we reiterated that if the State possesses a confession made by a co-defendant out of the presence of others, it, ". . . should consider whether to introduce statements of individual defendants in joint trials or rather to refrain from doing so or to consent to severance of the trials. Any other course involves serious risks that the trials will have been futile." *State v. Elliott*, 524 S.W.2d 473, (Tenn.1975) contains an important statement of the law on the rule in this State:

"The Court of Criminal Appeals held in its majority opinion that 'the *Bruton* rule has no application where, as in the case before us, both of the jointly tried codefendants confessed,' citing *O'Neil v. State*, 2 Tenn.Crim.App. 518, 455 S.W.2d 597; *Briggs v. State*, 501 S.W.2d 831, (Tenn.Crim.App.1973). We think this statement is an over-simplification of the impact of the *Bruton* rule. The fact that jointly tried codefendants have confessed precludes a violation of the *Bruton* rule where the confessions are similar in material aspects, which was the situation in both the *O'Neil* and the *Briggs* cases, *supra*. But where, the confession of one non-testifying codefendant contradicts, repudiates, or adds to material statements in the confession of the other non-testifying codefendant, so as to expose the latter to an increased risk of conviction or to an increase in the degree of the offense with correspondingly greater punishment, the latter codefendant is entitled to test the veracity of the statements in the confession of his codefendant. A denial to him of his right through the failure of his codefendant to take the stand brings the *Bruton* rule into play. . . ."

The court in *Elliott* found the error in the admission of the confession of the non-testifying co-defendant to be harmless in the light of the overwhelming evidence of guilt of the defendants, other than the confessions. There is no doubt that *Elliott* diluted somewhat our opinion in *Gwin v. State*, 523 S.W.2d 636, (Tenn.Cr.App.1975), in which we held that in the total context of that case redacted statements, similar to those in this case, were admissible. The *Elliott* court also held that if error did exist it was harmless because of the cumulative nature of the evidence. In *Alexander v. State*, 562 S.W.2d 207, (Tenn.Cr.App.1977), we were obliged to reverse in the light of a redacted statement where the substitution of the phrase "my friend" was made for the defendant's name each time it appeared in a co-defendant's statement. The court in *Alexander* did not instruct the jury that the co-defendant's statement could not be used to determine the defendant's guilt or innocence. For this reason as well as others noted in the opinion we could not find harmless error.

We have cited extensively from the foregoing cases to point out, as lucidly as we can, that the only thing which saves this case from reversal is the same evidence in the record which makes the separate confessions of the non-testifying co-defendants inadmissible at a joint trial under any circumstances, whether redacted or not. We have first of all the testimony of the accomplice, Andrea Rice, which implicated each defendant in the murder and armed robbery of John Holland. Patterson also testified, implicating Robinson and LeMay. The testimony of these women was corroborated by other evidence all of which pointed so unerringly to the defendants that it was an impossibility for any juror to mistake the fact that the blanks in the redacted confessions referred only to them, and no one else. However, we are satisfied that the error which occurred in the admission of the redacted statements of Robinson and LeMay

was rendered harmless by the overwhelming evidence of their guilt. The State has suggested that there was not any denial of confrontation in this case under the authority of *Parker v. Randolph*, 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979), because the confessions of Robinson and LeMay were interlocking. As we stated earlier in this opinion each of the confessions endeavored to place the responsibility for the homicide upon the other defendant. For this reason we do not find the confessions to be interlocking and do not consider *Parker v. Randolph* to be applicable.

Two other reasons why redaction was ineffective and improper are apparent in this record. The first came about by inadvertence during the testimony of Sheriff Bobby McCullough of Coffee County. The State was endeavoring to introduce statements made by defendant Patterson through his testimony when the following exchange took place in the presence of the jury:

THE COURT: Okay. Go ahead Sheriff. If there is reference to anyone in that statement, omit that reference, Sheriff.

SHERIFF McCULLOUGH: You're speaking of any other defendant?

THE COURT: Yes Sir.

The second has been raised as an issue by LeMay who protested against the admission of his redacted statement. He argues that to admit his statement altered in any form from that originally given would be a violation of his right against self-incrimination. We agree. The only authority offered on this issue is the case of *Curry v. State*, 397 S.W.2d 179, 217 Tenn. 257 (1965), submitted by the State. In that case the court held a defendant was entitled to admission of the entire contents of a statement he gave police except such portions as might not be relevant. In *Espitia v. State*, 288 S.W.2d 731, 199 Tenn. 696 (1956) in a somewhat more analogous case, the court, citing from various authorities, stated the law to be:

"When a confession is admissible, the whole of what the accused said upon the subject at the time of making the confession is admissible and should be taken together; and if the prosecution failed to prove the whole statement, the accused is entitled to put in evidence all that was said to him and by him at the time which bears upon the subject of controversy including any exculpatory or self-serving declarations connected therewith. *It is for the jury to say what weight shall be given to the several parts of the statement, for they may well believe that part which charges the prisoner, and reject that which tends to exculpate him.*" (Emphasis in original text).

We say, on these issues too, that the error was harmless. We find this to be particularly evident by the fact that LeMay was found guilty of second degree murder on the same evidence by which the jury convicted Robinson of homicide in the first degree.

Each of the defendants complain about improper comments made by the District Attorney General during the voir dire examination and in final argument. They point out his request of the jurors to sentence defendants for one hundred years or over and to return a sentence sufficiently long to prevent them from returning to Coffee County to commit further offenses. Robinson specifically complains about the State's characterization of him as a moocher, or a pillheaded pimp. Patterson complains about a statement during the voir dire examination in which the District Attorney General commented that each of the three defendants had confessed to killing and robbing John Holland and his reference to her as a prostitute. When the prosecutor first made the comment about a hundred year sentence the trial judge interrupted him and instructed him to omit all references to any period of years of punishment. This action of the trial court was sua sponte, and was sufficient to avoid any prejudice to the defendants. See *Buckingham v. State*, 540 S.W.2d 660, (Tenn.Cr.App. 1976).

In reference to the comments relative to confessions by the defendants, the

Attorney General asked the jury in essence if the State proved each of the three defendants confessed to killing John Holland, would they listen to the judge's charge and what effect they would give that [evidence]. The defendants objected and moved for a mis-trial. The court sustained their objection and commented that any reference to the fact that each defendant confessed to killing and robbing the victim would be improper. He then inquired of each individual juror if they understood that remarks by the prosecutor was not evidence and that they were to render a verdict based on the evidence only. Each juror indicated that he understood and could follow these instructions. The motion for mis-trial was overruled. This was sufficient to avoid prejudice to the defendants.

 It was clearly improper for the District Attorney General to argue that a long sentence was necessary to prevent the defendants from returning to Coffee County. Likewise, the name calling was inappropriate and certainly uncalled for. However, considering the nature of the crime involved and all the facts surrounding the homicide we have concluded that the improper conduct in closing argument by the prosecuting attorney did not affect the verdict to the prejudice of the defendants and did not warrant reversal of the conviction. See *State v. Sutton*, 562 S.W.2d 820, p. 827, (Tenn.1978).

 Robinson and Patterson protest denial of a motion for a change of venue. There was both testimony of witnesses and demonstrative evidence introduced in support of this issue. A detailed recitation of this evidence is not essential. It is the law that an application for change of venue is addressed to the sound legal discretion of the trial judge, and requires a strong case of error and a clear case of abuse of that discretion to authorize a reversal. *Swain v. State*, 407 S.W.2d 452, 219 Tenn. 145 (1966). Although evidence at the pre-trial hearing disclosed that many of the people in the county, including prospective jurors, were familiar with some of the facts surrounding the crimes for which defendants were on

trial, there was no evidence that this knowledge would require the conclusion that defendants could not have a fair trial. It is pertinent to note that even the witnesses presented on behalf of the defendants testified that they could render a fair and impartial verdict in the case based upon the evidence.

Both Robinson and Patterson take issue on denial of a motion for psychiatric evaluation under the provisions of T.C.A. § 33–708(a).

 Robinson's proof indicated he had been addicted to drugs for approximately three years. There was medical evidence that he had suffered from a liver ailment and, after his incarceration in the Coffee County Jail, from withdrawal symptoms. There was also evidence of two earlier attempts at suicide by him. There was no evidence whatsoever that he was either incompetent to stand trial or that there was any question of his mental capacity at the time of the commission of the crime. T.C.A. § 33–708 makes it discretionary with the trial judge to direct evaluation of an accused. See *Graham v. State*, 547 S.W.2d 531, (Tenn.1977). Under the evidence in this case there was no abuse of the trial judge's discretion in denying Robinson a psychiatric evaluation.

 Patterson's situation was somewhat different. It was established that she suffered from epilepsy and had a prescribed course of medication to maintain its control. She was granted a competency evaluation to determine if this prescribed medication would have any effect on her competency or sanity. The statute calls for examination at the Community Mental Health Center or by a licensed private practitioner designated by the Commissioner of Mental Health to serve the court. Patterson requested evaluation be performed at the Middle Tennessee Mental Health Institute rather than the Center designated by the statute and ordered by the trial judge. In the course of her evaluation she was informed by the doctor, who was completing the examination, that he might be called

upon to testify at her trial. Patterson testified that the doctor raised his voice and threatened her with the possibility that he would be called to testify for the prosecution. The trial court declined to accept her version of the incident or to direct further evaluation at any other institution than that set forth in the statute. It was Patterson's prerogative to withdraw from the evaluation if she saw fit to do so, particularly so, on the advice of counsel. We have examined this record and find it completely devoid of the slightest credible evidence of any incompetency or insanity which would impair Patterson's ability to stand trial or which existed at the time of the offense. We find no prejudice in the trial court's ruling.

Patterson, individually, complains the trial court denied admission of testimony of two defense witnesses who would testify that both Robinson and LeMay made comments while they were in jail after their arrest to the effect that they should have killed her or intended to get rid of her after the homicide and robbery occurred. She says this should have been admissible testimony because the whole theory of her defense was that she acted under coercion and duress in participating in the robbery and murder.

 In *Hale v. State*, 453 S.W.2d 424, 2 Tenn.Cr.App. 265 (1970), this Court held it to be reversible error to disallow testimony by a defendant of past conduct on the part of her husband to show that she acted in fear of him and was intimidated into participating in a burglary. The law in this State is that this is a valid defense insofar as robbery is concerned. *Mallicoat v. State*, 539 S.W.2d 54 (Tenn.Cr.App.1976). Although Patterson said she was not aware of the homicide, or the intent of any of the others to kill Mr. Holland, until almost immediately before the actual occurrence, there is serious doubt about the admission of her own testimony in this regard, and we think the trial judge properly disallowed the testimony of Mr. Rowe and Mr. Stein, the proposed defense witnesses. In *Mallicoat*, supra, we stated that coercion and

duress was not a defense to homicide, citing *Leach v. State*, 99 Tenn. 584, 42 S.W. 195 (1897), as authority. We pointed out that in order to constitute a defense to the commission of other crimes the coercion or duress must not only be present, imminent, and impending, but also the danger must be continuous throughout the time the act is being committed and must be such that a defendant could not withdraw in safety. The doctrine of coercion or duress cannot be invoked as an excuse by one who had a reasonable opportunity to avoid doing the act without undue exposure to death or serious bodily harm and there must be no reasonable opportunity to escape the compulsion without committing the crime. The evidence was clear in this case that during the time the defendants were attempting to gain entry to Mr. Holland's house they left Patterson in their automobile to herself. There was no reason why she could not have driven off and abandoned them there, or reported the incident to the police. Moreover, after the robbery and homicide occurred, she spent several days in the company of her confederates. The theory of her defense was that she was afraid to leave them, however, during that interval she went to the Courthouse by herself on another matter and returned voluntarily to their company. When the police first interviewed her she was at work. When they left, she immediately called the apartment where she had been staying with Robinson, LeMay and Rice to inform them that the police had questioned her about the homicide. She was obviously free from their influence at that time as well as when she was finally taken into custody and gave two statements evading the truth about the occurrence of the crime and her participation in it. The trial judge denied admission of the testimony of the other witnesses on the basis that it could not reflect on Patterson's state of mind because she was not aware of it. This was a sound statement of the law and a proper reason for denying admission of the evidence. Although he did not do so the trial judge would have been justified in instructing the jury that coercion or duress is not a defense to the crime of homicide,

and Patterson had the benefit of the fact that he did not do so. We find no error in the action of the trial judge in denying admission of the testimony.

■ Patterson filed a pre-trial motion to have herself removed from a jail cell she shared with co-defendant Andrea Rice. She claims her incarceration in the same cell with Rice subjected her to duress and coercion. There is no evidence in this record to that effect or that her personal safety and welfare was endangered in any fashion. It appears the facilities in the Coffee County Jail were inadequate to provide these two female defendants with separate cells. We find no abuse of discretion on the part of the trial judge in not granting the motion to provide separate facilities for this defendant.

■ We find no merit to defendant Patterson's complaint that she should have been granted a continuance due to a surgical operation which was performed approximately a month prior to trial. She claimed that her medical condition detracted from her physical and mental ability to communicate with her counsel in the preparation of her defense.

There is no evidence that defendant was prejudiced in any fashion by the denial of the continuance. There was a period of three or four months prior to the operation in which she was not inhibited in any fashion from communicating with her counsel as a result of her physical condition. She was taken off any medication which might have a tendency to effect her mental acuity approximately two weeks prior to trial. The surgeon who performed the operation on her knee testified that he had never experienced problems in communication with her. In the absence of prejudice to the defendant we find no error.

■ Patterson claims prejudice on the method of jury selection. This charge is based on the action of the trial judge in changing the method of examination of prospective jurors. Initially individual examination of prospective jurors was permitted. In order to expedite the voir dire procedure the trial judge subsequently adopted the method of having twelve prospective jurors seated and examined together. This is an acceptable method of jury selection in this State. *State v. Jefferson*, 529 S.W.2d 674, (Tenn.1975). Defendant has failed to show in any manner how she was prejudiced by this change in procedure. Counsel has not complied with Tenn.R.App.Proc. No. 27(a)(6), requiring a statement of facts relevant to the issues presented for review with appropriate reference to the record; nor 27(g) requiring reference to the page where the error occurred in the voir dire examination which composes more than one thousand pages of this record.

LeMay complains of a search of the apartment in which he and the defendant Rice had lived together for some eighteen months prior to their arrest and also the search of an automobile registered in her name which was used by them jointly. He claims a violation of several of the search warrant statutes, particularly:

(a) He says the warrant was not returned to the same magistrate by whom it was issued in accordance with T.C.A. § 40–507.

(b) The warrant was not executed by the officer to whom it was delivered as directed by T.C.A. § 40–508.

(c) The warrant was not forwarded to Coffee County in accordance with T.C.A. §§ 40–516, 518.

(d) He says the warrant shows on its face that it was not executed until three days after the search of the apartment took place.

(e) He says the warrant for the search of the automobile shows on its face it was not executed until five days after the search of the vehicle.

■ We reject out-of-hand the State's contention that LeMay lacks standing to challenge the validity of either search. He lived in the apartment and was a joint user of the automobile. However, we do not find any of LeMay's particularized complaints to have any merit. The evidence was undisputed that the warrant

was executed by two Nashville detectives on the day of its issue, with two Coffee County Officers assisting in the search. Neither the fact that the warrant was not returned to the same magistrate by whom it was issued, or the inaccuracy of the return made by the officers who made the search effects the validity of the search at the time it was made. *Bowman v. State*, 362 S.W.2d 255, 211 Tenn. 38 (1962). T.C.A. § 40–505 provides that a warrant is directed to the sheriff, any constable, or any peace officer to make a search. T.C.A. § 40–508 limits the execution of the warrant to any one of the officers to whom it is directed. The fact that it was delivered to a specifically named officer has no relevance so long as it was executed by any one of the officers to whom it was directed. *State v. Pigford*, 572 S.W.2d 921, (Tenn.1978). There was unquestionably some delay in the return of the warrant to the Criminal Court by the magistrate in accordance with T.C.A. § 40–516. These acts are no more than ministerial functions and cannot vitiate the validity of a lawful search. *Smith v. State*, 566 S.W.2d 553, (Tenn.Cr.App.1978). The same is true of the inaccuracies by the officers in stating the date of execution and other information on the warrant. The evidence at the suppression hearing was that the search was properly conducted in accordance with the statutes. The improper return cannot negate the validity of an otherwise legal search.

The eighty (80) year sentence of James Key Robinson for first degree murder is modified to fix his sentence at life imprisonment.

The murder convictions and sentences for Patterson and LeMay are affirmed.

BYERS and SCOTT, JJ., concur.