# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs October 6, 2009

## STATE OF TENNESSEE v. MICHAEL STEWART

**Direct Appeal from the Criminal  Court for Shelby County**
**No. 08-02042    Chris Craft, Judge**

**No. W2008-02680-CCA-R3-CD  - Filed February 26, 2010**

The Defendant-Appellant, Michael Stewart, was convicted of destruction or interference with utility lines, a Class E felony, following a bench trial in the Criminal Court of Shelby County.  He was sentenced as a multiple offender to three years and three months in the county workhouse.  On appeal, Stewart claims the evidence was insufficient to support his conviction because the State did not rebut his defenses of duress and necessity beyond a reasonable doubt.  Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ALAN E. GLENN and D. KELLY THOMAS, JR., JJ., joined.

Robert W. Jones, District Public Defender; Barry W. Kuhn, Assistant Public Defender, Memphis, Tennessee, for the Defendant-Appellant, Michael Stewart.

Robert E. Cooper, Jr., Attorney General and Reporter; John H. Bledsoe, Senior Counsel General; William L. Gibbons, District Attorney General; and Bryan Davis, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

     **Facts**.  Stewart was indicted by the Shelby County Grand Jury for destruction or interference with utility lines in violation of Tennessee Code Annotated section 39-14-411(a). He waived his right to a jury trial.  At the start of the bench trial, Stewart asserted the defenses of duress and necessity.  The following testimony was presented during the bench trial:

     Officer Donald Wicks of the Memphis Police Department testified that he was driving in his patrol car when he saw Stewart "chopping at a utility pole with an instrument in his

hand." This sighting occurred around 2:30 p.m. on December 2, 2007. Officer Wicks said he "observed [Stewart] for a few seconds and he was continuously chopping at the pole." Officer Wicks testified that Stewart used a tool which looked like "a jack-handle type instrument." Officer Wicks approached Stewart and asked what he was doing. Stewart responded that a baby was locked in a car, and he needed wire to unlock the door. Officer Wicks testified that no one was in the immediate area, so he did not investigate Stewart's claim about the baby. Officer Wicks did notice that a "line leading from the pole had been cut." He did not recall, however, whether the wire was still attached to the pole. Stewart was placed in the patrol car, and several other officers were called to the scene.

Scott Locke, an agent for the Memphis Light, Gas and Water division, testified that he responded to a call regarding the damaged utility pole. Locke inspected the pole and determined the pole's grounding wire was damaged and no longer functional. The wire was still attached to the pole, but it was flattened and pulled. Locke said the wire was made of copper, and valued at $4.00 per pound. Steward attempted to cut a two-foot section of the wire that was probably worth about $6.00. Locke testified that he spoke with Stewart, who was detained in a patrol car. Stewart said he needed the wire to help a woman break into her car. Later, Locke testified that Stewart "didn't say anything about a baby, or a woman, he just needed a stiff piece of wire to break into a car."

Rena Davis testified that on the afternoon of Stewart's arrest, she was driving in her car with her two-year old grandson. Her grandson was secured in a car-seat in the back seat of her car. Her tires needed air, so she stopped at a laundry mat that had an air dispenser. She turned off the engine, but accidently left the keys in the ignition. Davis stepped out of her car and closed the door. She then realized that she had locked herself out of the car. Davis tried to get her grandson to unlock the car, but she was unsuccessful. She did not have access to a phone. Davis estimated that she stood outside of her car for about twenty minutes before another car pulled up to use the air dispenser. Davis said Stewart stepped out of the car. She explained her situation to him, and he offered to help. Stewart went into the laundry mat, and he returned with a hanger which he used to try to unlock the door. Stewart was not able to open the door, so he went back into the laundry mat. He returned with a thicker hanger, but he still was unable to unlock the car. Davis estimated that Stewart spent twenty to twenty-five minutes trying to open the door. Stewart then walked away from the laundry mat without saying where he was going or whether he was coming back. Davis assumed he would return because his car was still parked near the air dispenser; however, Stewart did not return. Davis eventually found someone with a phone, and she contacted her daughter. Her daughter had a spare key, and she was able to unlock the car.

Davis said she felt her grandson was in danger. Her car was parked on a small slope and her emergency brake was not on. Davis said she worried that her grandson would get out of his car-seat and set the car in motion. Nonetheless, Davis testified that she did not

believe her grandson was in "physical danger." She did not recall acting frantic or upset during the incident or telling Stewart that she was afraid of what might happen. Davis said her windows were rolled up, but the inside of her car "wasn't too hot, or too cold." She chose not to break a car window because she worried her grandson might be harmed by the glass.

Stewart testified that he stopped at the air dispenser because one of his tires was low. He immediately noticed a woman standing next to the air dispenser talking to a baby inside of her car. The woman had locked herself out, and she was trying to get the baby to open the door. Stewart offered to help the woman, and he went into the laundry mat to find a hanger. The first hanger he found was too thin, so he returned to the laundry mat and found a thicker hanger. Stewart was still unable to unlock the car. Stewart said he told the woman that he was going to a nearby filling station to find help; however, in looking down the street, he noticed a wire hanging off a utility pole. Stewart believed he could unlock the car with the wire, so he went to his car and got his jack-iron. Stewart began striking the wire with the jack-iron when he was spotted by the police. Stewart said he told the officer that he needed the wire to rescue a baby who was trapped in a nearby car. The officer did not, however, investigate his claim.

Stewart was asked whether he thought the child was in danger. He responded:

> Well, I've got several grandkids, myself and I didn't know it was her grand-baby, I thought it was her baby, so I just went into the Superman mode and went to try to help, that's all I did. That's all I did, I just started trying to help her off the top of my head. I wasn't thinking of nothing.
>
> No, I didn't think the baby was in any danger, I just wanted to get the child out, you know. I was just helping, you know.

Stewart denied that he was trying to steal copper. He stated, "I was just thinking about getting the kid. The thought of doing something wrong was not in my mind at that time." Stewart did, however, say that during the incident, he thought the baby "was in a dangerous situation." Stewart admitted that he damaged the utility pole by striking it with his jack-iron.

Following the proof at trial, the trial court found Stewart guilty of destruction or interference with utility lines. With regards to the defenses of duress and necessity, the trial court stated:

> Now, the question is going to be, whether or not duress, or necessity was disproved by the state beyond a reasonable doubt.

Looking at duress and I am putting this on the record for any review, there are four elements for duress. The first is, that a third person is threatened with harm, which is present, imminent, impending and of such a nature as to induce a well grounded apprehension of death, or serious bodily injury. This is death, or serious bodily injury, if the act is not done.

There is no proof in the record, at all that this third person was threatened with death or serious bodily injury. There's really no proof that it was present, imminent, impending, because we have no idea how much time passed from the time that the defendant, if his testimony is to be believed, tried to open this car with a car coat hanger and then left and then later on, at some point was banging on this wire, not a horseshoe, but on the wire, flattening it.

. . .

So there's no proof that this child was at any time in imminent impending danger of death, or serious bodily injury.

His grandmother says that it was not a particularly hot day, hot or cold. The only reason her voice was raised at all was that she was trying to get her child to pull the button open to her closed window.

The second element that's present in duress is that the threatened harm is continuous throughout the time the act is being committed.

Well, we don't know what was happening to that child, whether or not the child was in or out of the car when this defendant was destroying utility property.

The third element, the harm is one from which the third person can't withdraw in safety. Obviously, the child could not withdraw.

But four, the desirability and urgency of avoiding the harm clearly outweighed, according to ordinary standards of reasonableness, the harm sought to be prevented by the law prescribing the conduct.

I mean, if this man had this wrench, all he had to do is break the window out in the car. He could have just taken the wrench and smashed the window out and gotten that baby out in just a second. Rather than go blocks away and start destroying property, which could have killed someone, had their [sic] been a lightning strike and it was not properly grounded.

So duress - and even the defendant testified that he was not concerned that the baby was in immediate danger. So this duress defense, I find, the state has disproved beyond a reasonable doubt.

As far as necessity there are two elements to necessity. The first one is that the defendant reasonably believed the conduct was immediately necessary to avoid imminent harm.

There is no proof that the defendant believed it was immediately necessary. And his testimony and also in the grandmother's testimony, he tried a couple of times with a coat hanger. It's very unclear to me how he could get this thick utility wire through the window, if it was three-quarters of an inch thick. But, he at no time testified that it was necessary to avoid imminent harm. And also, he left not even telling her that he was going to come back and we don't know how much time passed.

And number two, the desirability and urgency of avoiding the harm clearly outweighed, according to ordinary standard of reasonableness the harm sought to be prevented by the law prescribing the conduct.

I cannot find in the proof that's been proved that whenever you have a car that you can't get into and there's a child in the car, who's not in any imminent danger of serious bodily injury, that you could destroy other people's property to attempt to open the door.

Clearly, he could have just smashed the window out with his lug wrench. So I find that necessity, also, has not [been] shown by the defense beyond a reasonable doubt.[1]

I do not have a reasonable doubt of his guilt of the elements of the offense and I do not have a reasonable doubt as to whether or not he acted out of duress or necessity.

---

[1]We note the trial court misstated that the defendant had the burden of proving the defense of necessity beyond a reasonable doubt. We do not believe, however, that this misstatement affected the trial court's conclusion about either defense. This is evident by the trial court's statement, "I do not have a reasonable doubt as to whether or not he acted out of duress or necessity." Also, the trial court correctly stated the burden of proof for the defense of necessity at the start of its findings.

Stewart subsequently filed a motion to dismiss, arguing the trial court should have found that he acted under duress and out of necessity. This motion was denied. Stewart filed a timely notice of appeal.

**ANALYSIS**

Stewart claims the evidence was insufficient to support his conviction because the State failed to negate his defenses of duress and necessity beyond a reasonable doubt. The State argues that the evidence is legally sufficient to support Stewart's conviction for destruction or interference with a utility line.

**Standard of Review**. The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, this court must consider "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt." The requirement that guilt be found beyond a reasonable doubt is applicable in a case where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977) and Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)). The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and must reconcile all conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996).

When reviewing issues regarding the sufficiency of the evidence, this court shall not "reweigh or reevaluate the evidence." State v. Philpott, 882 S.W.2d 394, 398 (Tenn. Crim. App. 1994) (citing State v. Cabbage, 571 S.W.2d 832, 836 (Tenn. 1978), superseded by statute on other grounds as stated in State v. Barone, 852 S.W.2d 216, 218 (Tenn.1993)). This court has often stated that "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997) (citation omitted). A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citation omitted).

Stewart was charged with destruction or interference with utility lines. This offense is defined under Tennessee Code Annotated section 39-14-411(a) as follows:

(a) It is unlawful for a person to knowingly tap, cut, burn, break down, injure, destroy, or otherwise interrupt or interfere with the current, lines, cables, poles, towers, fixtures or appliances utilized to furnish service to the general public by any telephone or telegraph company, or electric light or power company engaged in furnishing communication, light, heat or power by electricity; or in any way to injure, remove, destroy or interfere with any gas fixtures or appliances.

Duress and necessity are both defenses under the Tennessee Code, and not affirmative defenses. See T.C.A. §§ 39-11-203, -504, -601, -609 (2007); see also State v. Green, 995 S.W.2d 591, 605 (Tenn. Crim. App. 1998); State v. Culp, 900 S.W.2d 707, 710 (Tenn. Crim. App. 1994). Consequently, the defendant is not required to prove either defense by a preponderance of the evidence. Culp, 900 S.W.2d at 710. Rather, if the defendant introduces admissible evidence supporting a defense, the State is required to negate the defense beyond a reasonable doubt. See T.C.A. § 39-11-201(a)(3) (2007). Here, the trial court stated at the start of its findings, "Now, the question is going to be, whether or not duress, or necessity was disproved by the state beyond a reasonable doubt." It appears, therefore, that the trial court found that Stewart introduced admissible evidence supporting the defenses of duress and necessity. As a result, the issues on appeal are whether sufficient evidence was presented that the State negated these defenses beyond a reasonable doubt.

**I. Duress**. Stewart claims the State did not rebut his defense of duress beyond a reasonable doubt. He argues that his efforts to remove the wire were justified because "[h]arm was being threatened to the grandchild of Mrs. Davis" who was in a locked car. In response, the State asserts "the present case is simply not the type of situation this defense addresses, as [is] clear from the sentencing commission comments to this statutory defense." The State contends the grandchild was not threatened by anyone with harm and that other legal methods were available to free the grandchild.

The defense of duress is codified at Tennessee Code Annotated section 39-11-504, which states:

(a) Duress is a defense to prosecution where the person or a third person is threatened with harm that is present, imminent, impending and of such a nature to induce a well-grounded apprehension of death or serious bodily injury if the act is not done. The threatened harm must be continuous throughout the time the act is being committed, and must be one from which the person cannot withdraw in safety. Further, the desirability and urgency of avoiding the harm must clearly outweigh the harm sought to be prevented by the law proscribing the conduct, according to ordinary standards of reasonableness.

(b) This defense is unavailable to a person who intentionally, knowingly, or recklessly becomes involved in a situation in which it was probable that the person would be subjected to compulsion.

Based on the Comments of the Tennessee Sentencing Commission for section 504, the defense of duress was not intended to apply to the circumstances of this case. The Comments state, "This rare defense is present when a defendant commits an offense because another person threatens death or serious injury if the offense is not committed." See also State v. Bledsoe, 226 S.W.3d 349, 356 (Tenn. 2007). Here, no one threatened that Davis' grandchild would be harmed if Stewart did not commit an illegal act. Stewart was not compelled by anyone to damage the utility wire; rather, he testified that he went into "Superman mode" in trying to help the child. The Comments also state that for the defense to be applicable, "there must be no reasonable opportunity to escape the compulsion without committing an offense." See also State v. Robinson, 622 S.W.2d 62 (Tenn. Crim. App. 1980). In this case, legal means were available to protect the grandchild, yet Stewart chose to commit an illegal act by his own volition. The trial court properly found that the State disproved the defense of duress beyond a reasonable doubt. Accordingly, Stewart is not entitled to relief on this issue.

**II. Necessity**. Stewart argues that the State failed to negate the defense of necessity beyond a reasonable doubt. He claims "the child was in imminent danger, and the desirability and urgency of avoiding harm to the child clearly outweighed the harm to the utility wire." The State asserts that no evidence was presented that the destruction of the utility wire was necessary, or that the possible harm to Davis' grandchild was imminent. Upon review, we agree with the State.

The defense of necessity is defined under Tennessee Code Annotated section 39-11-609, which states:

Except as provided in §§ 39-11-611--39-11-616, 39-11-620 and 39-11-621, conduct is justified, if:

(1) The person reasonably believes the conduct is immediately necessary to avoid imminent harm; and

(2) The desirability and urgency of avoiding the harm clearly outweigh the harm sought to be prevented by the law proscribing the conduct, according to ordinary standards of reasonableness.

In distinguishing the defense of necessity from duress, this court has stated:

While the defense of duress covered the situation where the coercion had its source in the actions of other human beings, the defense of necessity, or choice of evils, traditionally covered the situation where physical forces beyond the actor's control rendered illegal conduct the lesser of two evils. Thus, where A destroyed a dike because B threatened to kill him if he did not, A would argue that he acted under duress, whereas if A destroyed the dike in order to protect more valuable property from flooding, A could claim a defense of necessity.

State v. Green, 995 S.W.2d 591, 606 (Tenn. Crim. App. 1998) (quoting United States v. Bailey, 444 U.S. 394, 409-10, 100 S. Ct. 624 (1980)).

Stewart contends the damage caused to the utility wire was needed to avert possible harm to Davis' grandson. His basic argument is that his conduct was the lesser of two evils. As stated above in Green, this claim is properly raised as one of necessity, rather than duress. Stewart's claim of necessity, however, was not supported by the proof at trial. Stewart failed to show that he believed his actions were *necessary* to prevent possible harm to the child. Stewart was asked, "[C]ould you have done anything else, other than what you did to try to help [Davis]?" Stewart responded, "Yes, I could have." Steward did testify that he believed the child "was in dangerous situation;" however, no evidence was presented that Stewart could not have pursued other, legal options to help. The proof further showed that the possible harm to Davis' grandson was not imminent. Davis testified that she did not believe her grandson was in "physical danger," and she did not recall acting frantic or upset during the incident. Stewart similarly stated, "I didn't think the baby was in any danger." Finally, the "desirability and urgency of avoiding the harm" to the child did not outweigh the damage to the utility pole, "according to ordinary standards of reasonableness." See T.C. A. § 39-11-609(2). As discussed above, the proof showed that harm to the child was not imminent and the actions taken by Stewart were not necessary; thus, the desirability and urgency of avoiding any potential harm was minimal. In contrast, an agent for the Memphis Light, Gas and Water division testified that the pole's grounding wire was damaged to the point that it was no longer functional. The trial court properly found that the State disproved the defense of necessity beyond a reasonable doubt. Accordingly, Stewart is not entitled to relief on this issue.

**CONCLUSION**

Based on the foregoing, the judgment of the trial court is affirmed.

_____

CAMILLE R. McMULLEN, JUDGE